Michael S. O'Meara
The O'Meara Law Office, P.S.
1602 Virginia Ave
Everett, WA 98201

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| AMANDA SCHICK,<br><br>                    Plaintiff,<br><br>          v.<br><br>STUDENT LOAN SOLUTIONS, LLC,<br><br>                    Defendant. | Civil Action No. 2:20-cv-01529-BJR<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## I.      INTRODUCTION

Plaintiff Amanda Schick ("Plaintiff" or "Ms. Schick") applied for and obtained a student loan from Bank of America, N.A. ("Bank of America").  A few years later, she filed a bankruptcy petition which identified this precise loan with the precise amount then owed.  The loan was not discharged because it meets at least one of the criteria for nondischargeability found in 11 U.S.C. § 523(a)(8).  Plaintiff failed to pay the loan as agreed and Bank of America placed it with Williams & Fudge, Inc. ("WFI") to assist with collection.  Plaintiff then made twenty consecutive monthly

Defendant's Opposition to Partial Summary Judgment

PAGE 1

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

payments towards the obligation, which she has both admitted and denied doing within this action.

SLS then purchased a portfolio of student loans from Bank of America, which included Plaintiff's

loan. SLS placed the loan with WFI to assist with collection.

After receiving a communication from WFI regarding the loan, Plaintiff called WFI.

During the call, she acknowledged owing the loan to SLS and inquired about possible resolutions.

Unfortunately, she could not presently afford the resolutions WFI was authorized to offer. A

couple years later, the loan was placed with the counsel to file suit. At no point prior to placing

the loan with counsel had Plaintiff disputed the loan or otherwise claimed she never received the

funds. Counsel sent Plaintiff a letter regarding the debt, and she responded with a letter disputing

the debt and requesting verification. After sending the validation documents, counsel filed suit on

behalf of SLS against Plaintiff. That action is still pending.

Shortly after filing her answer in the other action, Plaintiff filed this action in state court

(and SLS removed same) asserting violations of state and federal consumer statutes. She contends

the verification documents contained false statements, and that she has no idea who SLS is or why

she would owe them so much money. Plaintiff also now contends, for the first time, that she never

received the loan from Bank of America. She submits documents which she claims shows she did

not need the loan because everything was covered by her financial aid package, but her own

evidence shows she received significant funds from an outside source which she never identifies.

SLS contends that outside source is the Bank of America loan. Moreover, Plaintiff's claimed

recollection of events transpiring approximately fourteen to fifteen years ago is remarkably clear

considering she cannot seem to recall events from three years ago for which she possess

documentation.

Plaintiff contends "[i]f SLS has legitimate, admissible evidence that Ms. Schick owes

Defendant's Opposition to Partial Summary Judgment

PAGE 2

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

money (such as, perhaps, the promissory note that SLS claims exists, or evidence that anyone ever received a dime), it has had ample opportunity to come forward."   Plaintiff is intentionally misreading the document attached to both her complaint and declaration, which clearly states it is both an application **and** an agreement.  In short, this document and the Note Disclosure Statement it expressly incorporates are the promissory note between Plaintiff and Bank of America, which was purchased and assigned to SLS.  Moreover, SLS has specifically requested Plaintiff's bank statements for the time frame the loan was disbursed, which almost certainly would show whether she "ever received a dime."  Despite being obligated to produce this highly relevant evidence, and despite claiming to have produced same, Plaintiff failed to produce any bank statements at all.  Not only does she now fault Defendant for not having these bank statements, she asks the Court to hold SLS liable because it does not have them.  Plaintiff cannot shirk her discovery obligations and obtain judgment against SLS for lacking the documents she failed to provide.

At all times, Plaintiff has acted in a manner which would indicate that she received the loan, and has even previously admitted to having received it.  She cannot now claim otherwise when it suits her, especially when she refuses to provide documentation which would almost assuredly corroborate one party's version of events.  Plaintiff's own evidence creates material issues of fact showing she is not entitled to summary judgment, and the Court should deny the motion on that basis alone.  Moreover, Plaintiff's failure to provide discovery and her contradictory statements (both within these proceedings and prior to them) show SLS needs additional discovery to fully and properly oppose Plaintiff's motion.  The Court should therefore also deny the motion on that basis under Fed. R. Civ. P. 56(d) or, alternatively, defer considering the motion until discovery is complete

## II.    RELEVANT FACTS

Plaintiff sought and obtained a student loan from Bank of America in 2007. *See Declaration of Student Loan Solutions, LLC* ("*SLS Decl.*"), ¶¶ 19, 22. Her agreement with Bank of America states deferred interest will be capitalized. *SLS Decl.*, ¶¶ 18, 24-24. She acknowledges being a full time student until May 2013. *See Declaration of Michael S. O'Meara* ("*O'Meara Decl.*"), ¶ 4 and Ex. A at p. 8, Int. Resp. 12. Accrued interest therefore capitalized during that entire period. *SLS Decl.*, ¶¶ 23-27 and Ex. C. In 2010, she filed a bankruptcy petition which listed only one student loan owed to Bank of America, and which identified the exact amount due after capitalized interest was added on January 4, 2010. *O'Meara Decl*, Ex. B at SHCICK000019-SCHICK000023 and *SLS Decl.*, ¶ 28 and Ex. D. As explained *infra*, the loan was not discharged. Plaintiff did not make the agreed upon payments and Bank of America placed the loan with WFI to assist with collection. *SLS Decl.*, ¶ 26 and Ex. C, *WFI Decl.*, ¶¶ 4-5. Plaintiff then made twenty consecutive monthly payments of $50.00 to WFI toward the balance of the loan. *WFI Decl.*, ¶¶ 7, 9 and Ex. A, *O'Meara Decl.*, ¶ 4 and Ex. B at SCHICK000057-SCHICK000099 and *Schick Decl.*, DE 19-1, p. 3, ¶ 11. Curiously, she both concedes making these payments while simultaneously denying she made them. *Schick Decl.*, DE 19-1, p. 3, ¶ 11, and *O'Meara Decl.*, ¶ 4 and Ex. A at p. 12-20, RFA resp. 4-26. At no point did Plaintiff dispute the debt with Bank of America or WFI, and at no point did she make a claim to Bank of America or WFI that she did not receive the loan. *SLS Decl.*, ¶

SLS acquired Plaintiff's loan when it purchased a portfolio of student loans from Bank of America. *SLS Decl.*, ¶¶ 3-9, and Ex. A-D. Plaintiff received communication from WFI regarding the transfer of her loan from Bank of America to SLS. *SLS Decl.*, ¶ 12 and *O'Meara Decl.*, ¶ 4 and Ex. B at SCHICK00100-SCHICK000101. In response to these communications, Plaintiff contacted WFI via telephone and, during the call, she admitted owing the loan to SLS and

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

attempted to negotiate a resolution. *WFI Decl.*, ¶¶ 13-14 and Ex. B at Call Trans., p. 2-15. At no point during the call did she claim she never received the loan or inquire as to the identity of SLS or why she would owe SLS any money. *Id.* Plaintiff made no further payments and SLS placed the loan with counsel to file suit. *WFI Decl.*, ¶¶ 15-18 and *SLS Decl.*, ¶¶ 33-36. Counsel's office sent a letter to Plaintiff and a verification in response to her dispute. DE 1-1, pp. 14, 16-27. Counsel then filed suit on behalf of SLS against Plaintiff. DE 1-1, pp. 29-32. That lawsuit is still pending. *O'Meara Decl.*, ¶ 17.

After filing an answer to that action, Plaintiff filed her complaint in this action. She now claims to have been confused by the letters and documents provided by counsel's office and claims to have no earthly idea who SLS is or why she might owe SLS money. DE 1-1, p. 6, ¶ 7 and *Schick Decl.*, DE 19-1, p. 3, ¶ 13. She makes these claims despite having documentation as to who SLS is and why she owes SLS the identified balance, and despite having spoken to WFI about it in 2018. *O'Meara Decl.*, ¶ 4 and Ex. B at SCHICK00100-SCHICK000101, *WFI Decl.*, ¶¶ 13-14 and Ex. B at Call Trans. p. 2-15. Despite claiming the documents were misleading, she does not identify any action she took in reliance on them. *See, generally,* DE 1-1, pp. 5-12 and *Schick Decl.*, DE 19-1, pp. 1-4. She also claims that she sought the advice of counsel only after the lawsuit was filed. *Schick Decl.*, DE 19-1, pp. 3-4, ¶ 19.

### III.   STANDARD OF REVIEW

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Summary judgment is mandated under Rule 56(c) if there are no genuine issues as to any material fact "**after** adequate time to complete discovery…" *Id.* at 317 (emphasis added). All reasonable inferences are to be

Defendant's Opposition to Partial Summary Judgment

PAGE 5

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

drawn in favor of the non-moving party. *Anderson v, Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The role of the Court is not to "weigh the evidence or determine the truth of the matter, but only [to] determine[] whether there is a genuine issue for trial."  *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999).  "[I]f direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir 1999) (internal citation and quotation marks omitted).  The Court cannot "disregard direct evidence on the ground that no reasonable jury would believe it."  *Id.* (citation omitted).

## IV.   ARGUMENT

### a.  <u>Plaintiff is Estopped from Denying She Received the Loan</u>

According to the Washington Supreme Court:

> Estoppel is a preclusion in law, which prevents one alleging or denying a fact in consequence of his own previous act, allegation, or denial, of a contrary tenor. Equitable estoppel, or estoppel in pais, is that condition in which justice forbids that one speak the truth in his own behalf.  It stands simply as the rule of law which forecloses one from denying his own express or implied admission, which has in good faith, and in pursuance of its purpose, been accepted and acted upon by another.  To constitute estoppel in pais, three things must occur: (1) An admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.

*Thomas v. Harlan*, 27 Wash.2d 512, 518, 178 P.2d 965, 968 (Wash. 1947).

The crux of Plaintiff's argument is her contention she did not receive the Bank of America loan.  She asserts "[t]he single document containing her signature is an application, not a 'promissory note' as SLS has falsely claimed."  DE 19, p. 4.  This contention is directly contradicted by the documents Plaintiff attaches both to her complaint and declaration.  *See* DE 1-

1, pp. 22-27 and DE 19-1, pp. 16-21.  The title of the document which Plaintiff claims is only an application is "Loan Request/Credit Agreement."  DE 1-1, p. 22 and DE 19-2, p. 16.  Moreover, the signature page indicates it was faxed from a telephone number with a 503 area code, which is an area code associated with Portland, Oregon.  *Id.*  The document itself states:

> **HOW I AGREE TO THE TERMS OF THIS LOAN.**  By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement.  If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed.  The Disclosure Statement is incorporated herein by reference and made a part hereof.  The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information.  I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburse the loan proceeds; or (b) using or allowing the loan proceeds to be used on my behalf without objection.  Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions.  **If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan.  To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement.**  If loan proceeds have been disbursed, I agree that I will immediately return the loan proceed to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return many loan proceeds to you.  If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be cancelled and I will be in default of this Credit Agreement. (See Paragraph I.)

DE 1-1, p. 23, ¶ B.2,  *Schick Decl.*, DE 19-1, p. 17, ¶ B.2, and *SLS Decl.*, ¶¶ 16-18, and Ex. B, ¶ B.2 (emphasis in originals).

Plaintiff also attaches the Disclosure Statement to both her complaint and her declaration.  *See* DE 1-1, p. 27 and DE 19-1, 21.  The Disclosure Statement states "[t]his disclosure statement relates to your Loan Note disbursed on August 28, 2007" and identifies a loan amount of $30,000.00 plus an origination fee of $3,519.55.  *Id.*  It also lists Plaintiff's address as "626 NE 93rd Ave Apt. A, Portland, OR 97220 USA."  *Id.*  This is the same address Plaintiff identifies in

Defendant's Opposition to Partial Summary Judgment

PAGE 7

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

her discovery responses as her address at the time which, importantly, differs from the address listed on the Credit Agreement.  *See* DE 1-1, p. 22, 27, DE 19-1, p. 16, 21, and *O'Meara Decl.*, ¶ 4 and Ex. A at p. 2, Int. Resp. 1.  This document along with the markings on the Credit Agreement are indicia that the loan was in fact provided.  The Credit Agreement includes Plaintiff's signature and a fax number, which indicates Plaintiff submitted the document to Bank of America, while the Disclosure Statement with Plaintiff's updated address indicates the funds were provided.  The only thing Plaintiff has not provided is her bank statements showing the funds were deposited, despite these items being specifically requested, and despite representing that they have been produced. *O'Meara Decl.*, ¶ 4 and Ex. A at p. 26, RFP Resp. 14, Ex. B at SCHICK000001-SCHICK000131. Assuming Plaintiff's response that she only had one bank account at that time is accurate [*O'Meara Decl.*, ¶ 4 and Ex. A at p. 9, Int. Resp. 15], the account statements would almost certainly corroborate one party's position.

Despite Plaintiff's assertions to the contrary, her actions and statements prior to June 2020 indicate she received the loan.  In her 2010 bankruptcy filing, she identified a student loan with Bank of America in the amount of $40,338.00, the exact amount due after capitalized interest was added on January 4, 2010, as one of her debts.  *O'Meara Decl*, ¶ and Ex. B at SHCICK000019 and *SLS Decl.*, ¶ 28 and Ex. D.  Importantly, this is the only Bank of America student loan she identifies.  *O'Meara Decl.*, ¶ 4 and Ex. B at SCHICK00000019-SCHICK000023.  Plaintiff contends her bankruptcy "is not germane to the outcome of this case," so Defendant will not address it at length.[1]  However, the loan in question was not discharged.  Student loans which are "made under any program funded in whole or in part by a…nonprofit institution" are excepted

---

[1] Should Plaintiff substantively address her bankruptcy in a reply memorandum, Defendant will seek the Court's permission to file a surreply to address same.

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

from discharge.  11 U.S.C. § 523(a)(8)(A)(i).[2]  The Credit Agreement states:

> I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School.  I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a)(8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resource Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code.  This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.

DE 1-1, p. 25, ¶ L.11, *Schick Decl.*,  DE 19-1, p. 19, ¶ L.11., and *SLS Decl.*, ¶¶ 9, 18 and Ex. B, ¶ L.11.  Numerous courts have held student loans provided by lenders under a TERI program to be non-dischargeable.  *See, e.g., In re Loper*, 2021 WL 1192534 (Bankr. M.D. Fla. Mar. 29, 2021), *In re Medina*, 2020 WL 5553451 (Bankr. S.D. Cal. Sept. 10, 2020), *In re Mata*, 2020 WL 5543716 (Bankr. C.D. Cal. July 31, 2020), *In re Duits*, 2020 WL 256770 (Bankr. S.D. Ind. Jan. 15, 2020), and *In re Rodriguez*, 319 B.R. 894 (Bankr. M.D. Fla. Feb. 1, 2005).

WFI contacted Plaintiff about repaying the Bank of America student loan, which is the only Bank of America student loan she identified in her bankruptcy petition.  *Schick Decl.*, DE 19-1, p. 2, ¶ 9, and *O'Meara Decl.*, ¶ 4 and Ex. B at SCHICK00000019-SCHICK000023.  She then made twenty consecutive monthly payments to WFI towards the balance of the loan.  *WFI Decl.*, ¶¶ 7, 9 and Ex. A, *O'Meara Decl.*, ¶ 4 and Ex. B at SCHICK000057-SCHICK000099 and *Schick Decl.*, DE 19-1, p. 3, ¶ 11.  Plaintiff now admits making such payments, despite denying making the payments in her discovery responses.  *Schick Decl.*, DE 19-1, p. 3, ¶ 11, and *O'Meara Decl.*, ¶ 4 and Ex. A at p. 12-20, RFA resp. 4-26.  In discovery, Plaintiff produced fifteen letters from WFI regarding payments made towards the loan, with each indicating that a payment will be made on a certain date.  *O'Meara Decl.*, ¶ 4 and Ex. B at SCHICK000057-SCHICK000099. Plaintiff

---

[2] Defendant acknowledges that other discharge exceptions may apply.  Should Plaintiff substantively raise the issue of discharge, Defendant reserves the right to argue nondischargeability on other grounds, if any.

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

also produced a letter from WFI dated December 22, 2017, which identifies the loan as being owed to SLS.  *O'Meara Decl.*, ¶ 4 and Ex. B at SCHICK000100-SCHICK000101.  The loan number on this letter is the same as the loan number on the previous letters, and the amount owed is exactly $50.00 less than the August 25, 2016 letter, which indicated a $50.00 payment would be made on September 4, 2016.  *O'Meara Decl.*, ¶ 4 and Ex. A at SCHICK000057-SCHICK000101.

Shortly thereafter, on January 8, 2018, Plaintiff called WFI to discuss the loan.  *WFI Decl.*, ¶¶ 13-14 and Ex. B.  During the call, she acknowledges owing the loan, specifically stating, "I am calling regarding an email I received about a debt I have."  *WFI Decl.*, ¶¶ 13-14 and Ex. B at Call Trans., p. 2.  After being told the debt is owed to SLS and being provide the current balance, Plaintiff and the WFI representative discuss possible resolutions.  *WFI Decl.*, ¶¶ 13-14 and Ex. B at Call Trans., p. 3-15.  At no point during the conversation does Plaintiff inquire about the identity of SLS or otherwise indicate she does not know who SLS is.  *WFI Decl.*, ¶¶ 13-14 and Ex. B at Call Trans. p. 2-15.  She also does not dispute receiving the loan.  *Id.*  Rather, Plaintiff acknowledges having made the previous payments and states she "assumed things had been resolved because the payments had stopped going through, which is why I haven't been paying on it."  *WFI Decl.*, ¶¶ 13-14 and Ex. B at Call Trans. p. 3.  Moreover, neither SLS nor WFI have any record of Plaintiff ever disputing receiving the loan prior to the account being placed with counsel to collect.  *SLS Decl.*, ¶ 10 and *WFI Decl.*, ¶ 17.

Plaintiff now claims that upon receiving a letter about the debt in June 2020 that she "did not know why [she] would owe so much money to Student Loan Solutions as this was the first time [she] had heard from its attorney…" *Schick Decl.*, DE 19-1, p. 3, ¶ 13.  She makes this claim under penalty of perjury despite providing documentation she received about the loan being owed to SLS, despite admitting to having a debt with SLS on a call in January 2018, and despite having

Defendant's Opposition to Partial Summary Judgment

PAGE 10

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

made twenty payments towards this very loan.  Indeed, at all times prior to June 2020, Plaintiff's actions and statements are wholly consistent with her having received the loan.

SLS purchased a portfolio of student loans from Bank of America.  *SLS Decl.*, ¶ 3.  Included in that portfolio was Plaintiff's loan.  *SLS Decl.*, ¶¶ 8-9 and Ex. A-D.  SLS received a copy of an agreement between Plaintiff and Bank of America, the signature page of which appears to be executed and faxed by Plaintiff, and a Disclosure Statement showing the loan had been disbursed.  *SLS Decl.*, ¶¶ 9, 17-19, 22 and Ex. B-C.  Plaintiff made twenty payments towards the balance of the loan and acknowledged owing the loan to SLS's agent, WFI.  In determining whether to place the loan with counsel for suit, SLS relied on the documents provided by Bank of America, the payments made by Plaintiff, and both Plaintiff's acknowledgement of the loan and lack of disputing the loan.  *SLS Decl.*, ¶¶ 10, 35-36, *WFI Decl.*, ¶¶ 15-18, and *O'Meara Decl.*, ¶ 16 and Ex. C.  Allowing Plaintiff to now claim she never took out the loan and to hold SLS liable for filing suit on a loan she now claims never existed would constitute a serious injury to SLS.  This is especially true when Plaintiff contends SLS cannot prove she received funds but fails to produce highly relevant evidence which would show she received the funds in question, despite SLS specifically requesting those documents, despite Plaintiff being obligated to produce those documents, and despite Plaintiff erroneously claiming to have produced those documents.  Plaintiff is therefore estopped from denying she received the loan.

Plaintiff is also judicially estopped from denying she received the loan.  "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position."  *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 591, 600 (9th Cir. 1996) (citations omitted).  "The policies underlying preclusion of inconsistent positions are

Defendant's Opposition to Partial Summary Judgment

PAGE 11

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings." *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1215 (9th Cir. 1984), *cert. denied*, 269 U.S. 1197 (1985) (citation and quotation marks omitted).  "The doctrine is intended to protect against a litigant playing 'fast and loose with the courts' by asserting inconsistent positions." *Rockwell Intern. Co. v. Hanford Atomic Metal Trades Council*, 851 F.2d 1208, 1211 (9th Cir. 1988) (citations omitted).  "This court has restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position."  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) (citation omitted).  "The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases." *Id.* (citing *Risetto*, 94 F.3d at 605).

Regarding judicial estoppel, the Supreme Court has said:

[S]everal factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be clearly inconsistent with its earlier position.  Second, courts generally require whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in the later proceeding would create the perception that either the first or the second court was misled…  Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations…and thus poses little threat to judicial integrity.  A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair determinant on the opposing party if not estopped.

*New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (internal citations and quotation marks omitted).  All three factors weigh in SLS's favor and thus, Plaintiff is judicially estopped from denying the existence of the loan.

Plaintiff filed for bankruptcy, seeking and obtaining a discharge.  *O'Meara Decl.*, ¶ 4 and Ex. B. at SCHICK000001-SCHICK000056.  While the loan at issue was not discharged for the

reasons stated above, Plaintiff nevertheless listed her obligations intending the bankruptcy court to rely on them, and the bankruptcy court did rely on them in determining she could not presently afford to pay her obligations. SLS expects Plaintiff to argue she merely "listed every entity that claimed she owed money" and "there is no meaning at all attached to the listing of debts in the Plaintiff's bankruptcy case." *O'Meara Decl.*, ¶ 4 and Ex. A at p. 8, Int. Resp. 10. Plaintiff's position is clearly incorrect. First, there is meaning to listing debts because debts are payed out of the bankruptcy estate based on priority. *See, e.g.,* 11 U.S.C. § 726. As for Plaintiff's contention that she was only "list[ing] every entity that claimed she owed money" and the identification of the loan is not an acknowledgement of the loan, this contention does not hold water because the petition she filed specifically address these consideration. Schedule F of the petition, where the debt is identified, specifically states, in relevant part:

> State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. …
> …
> If the claim is disputed, place an "X" in the column labeled "Disputed."

*O'Meara Decl.*, ¶ 4 and Ex. B at SCHICK000019. Here is Plaintiff's entry for this loan:

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER *(See instructions above.)* | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. 9PA0 | | | Consideration: Education Loan | | | | |
| AES Bank of America PO Box 2641 Harrisburg, PA 17105 | | | | | | | 40,338.00 |

*O'Meara Decl.*, ¶ 4 and Ex. B at SCHICK000019. Plaintiff did not mark "disputed" for this loan or any of her other debts. She cannot claim to owe this loan for purposes of obtaining a bankruptcy and now deny owing it, and she should be judicially estopped from doing so.

Defendant's Opposition to Partial Summary Judgment

PAGE 13

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

1

**b.  Plaintiff's Own Evidence and Prior Statements Show Questions of Material Fact**

2

Plaintiff states in her declaration:

3

My memory of my first years of college is relatively clear, as it was a formative
period of my life.  For example, during my freshman year in 2006, I took out private
loans, but after learning about Federal subsidized loans and Pell grants – I
remember this event in my life with particular clarity – I did not take any further
private loans because of better rates and deferred interest.

4

5

6

7

In the fall semester of my sophomore year (2007), my tuition, housing, and other
expenses were paid in full through Stafford loans, grants, and scholarships.  To
confirm my memory of this, in February 2021, I obtained the attached true and
correct copy of my student ledger from the fall semester of 2007 (attached as
**Exhibit A).**

8

9

10

*Schick Decl.*, DE 19-1, p. 2, ¶¶ 4-5 and Exhibit A.  When asked to "[i]dentify any and all sources

11

of funds (including but not limited to scholarships, grants, loans, savings, gifts, family, etc.) which

12

[she] used to pay for [her] tuition and expenses at Multnomah Bible College [now Multnomah

13

University], as well as any and all living expenses incurred by [her] when [she was] attending

14

Multnomah Bible College," Plaintiff provided the following response:

15

16

The Plaintiff received a financial aid package from Multnomah University for
tuition room and board and for all other costs of attendance.  From 2006-2007, the
Plaintiff lived on campus housing and had a meal plan for her room and board.  In
subsequent years, from 2008 -2013, the Plaintiff lived in off campus housing,
sharing rent with roommates but the costs of attendance at Multnomah University
continued to include a financial aid package that include room and board along with
other fees and expenses.  Depending on the apartment and living situation, the
Plaintiff's rent and living expenses would range from approximately $500-$800 per
month, well within the range of the amount allocated in her financial aid package.

17

18

19

20

21

*O'Meara Decl.*, ¶ 4 and Ex. A at p. 8, Int. Resp. 13.  From July/August 2007 to May 2008, Plaintiff

22

resided in an off campus apartment located at 626 NE 93rd Ave., Apt. A, Portland, OR 97220-

23

5798.  *O'Meara Decl.*, ¶ 4 and Ex. A at p. 2, Int. Resp. 1.

24

In response to discovery requests, Plaintiff produced nine documents, which are all dated

25

February 8, 2021, and which purport to detail the charges and credits she incurred while she was

Defendant's Opposition to Partial Summary Judgment

PAGE 14

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

an undergraduate at Multnomah University.  *O'Meara Decl.*, ¶ 4 and Ex. B at SCHICK000123-SCHICH000131.  Included in these documents is her "student ledger from the fall semester of 2007" which she attaches to her declaration as Exhibit A.  *Schick Decl.*, DE 19-1, p. 5, ¶ 5 and Ex. A, p. 6; and *O'Meara Decl.*, ¶ 4 and Ex. B at SCHICK 000125.  Plaintiff contends this document "confirms [her] memory" that "[i]n the fall semester of [her] sophomore year (2007), [her] tuition, and other expenses were paid in full through Stafford loans, grants, and scholarships."  *Schick Decl.*, DE 19-1, p. 2, ¶ 5.  Contrary to Plaintiff's assertion, the student ledger attached as Exhibit A to her declaration, as well as the student ledgers she produced for her other undergraduate semesters show neither Plaintiff's story nor her numbers add up.

Plaintiff admits taking out private loans during her freshman year in 2006.  *Schick Decl.*, p. 2, ¶ 4.  The only loans listed on her student ledger for the 2006 fall semester are a "Plus Loan" and a "Stafford Loan Subsidized," while the only loans listed on her student ledger for the 2007 spring semester are a "Plus Loan" and a "Stafford Loan Subsidized."  *O'Meara Decl.*, ¶ 4 and Ex. B at SCHICK000123-SCHICK000124.  Both PLUS loans and subsidized Stafford loans are federal student loans.  *See* https://studentaid.gov/understand-aid/types/loans/plus (last visited Mar. 31, 2021) and https://studentaid.gov/understand-aid/types/loans/subsidized-unsubsidized (last visited Mar. 31, 2021).  Since Plaintiff concedes she took out a private student loan, and since no private student loan appears on her student ledger, it is clear that the student ledgers do not encompass all funds she used to pay for her tuition, living expenses, and other expenses while attending school.

For Plaintiff's sophomore year, she contends she did not take out any private loans and that her "tuition, housing, and other expenses were paid through Stafford loans, grants, and scholarships."  *Schick Decl.*, DE 19-1, p. 2, ¶¶ 4-5.  A review of Plaintiff's student ledgers shows

Defendant's Opposition to Partial Summary Judgment

PAGE 15

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

this simply cannot be true.  Plaintiff concedes she lived in an apartment from July/August 2007 to May 2008, and estimates she paid between $500 and $800 per month in living expenses.  *O'Meara Decl.*, ¶ 4 and Ex. A at p. 2, 8, Int. Resp. 2, 13.  This is at least ten months (possibly eleven) at an expense of between $5,000 and $8,000 for the school year, and between $2,500 and $4,000 for the semester.  In the fall semester, Plaintiff received financial aid refunds of $390.00 and $1,150.00, for a total of $1,540.00.  *O'Meara Decl.*, ¶ 4 and Ex. B at SCHICK000125.  For the spring semester, Plaintiff received financial aid refunds of $369.50 and $1,150.00, for a total of $1,519.50.  *O'Meara Decl.*, ¶ 4 and Ex. B at SCHICK000126.

Even assuming Plaintiff put every single penny of these refunds towards her rent and living expenses (which is a wholly unreasonable assumption considering she received refunds of $322.50 and $1,200.00, for a total of $1,522.50, in the spring semester of her freshman year **after** accounting and paying for room and board in the amount of $2,670.0) (*O'Meara Decl.*, ¶ 4 and Ex. B at SCHICK000124), she is still short approximately $1,000-$2,500 each semester, and short approximately $2,000-$5,000 for the school year.[3]  Plaintiff's own documents show her "tuition, housing, and other expenses" could not possibly have been "paid through Stafford loans, grants, and scholarships," despite her sworn declaration to the contrary.  *Schick Decl.*, DE 19-1, p. 2, ¶ 5.  SLS contends the funds to pay these excess expenses came from the Bank of America loan, while Plaintiff neither identifies nor alleges any alternative source.  Plaintiff's own documents show there are questions of material fact rendering summary judgment inappropriate.

Plaintiff has further provided inconsistent and contradictory discovery responses, which contradict both each other and her declaration.  For example, Plaintiff acknowledges making

---

[3] Plaintiff also appears to have traveled to Paris in the spring semester of her sophomore year.  *O'Meara Decl.*, ¶ 4 and Ex. B at SHCICK000126. Although not clear from the documents provided, it seems likely there were additional out of pocket expenses incurred for such a trip.

Defendant's Opposition to Partial Summary Judgment

PAGE 16

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

payments to WFI but also denies having made them. *Schick Decl.*, DE 19-1, p. 2, ¶ 11 and *O'Meara Decl.*, ¶ 4 and Ex. A at p. 6, 12-20, Int. Resp. 9 and RFA Resp. 4-23. If it is Plaintiff's position that she made payments to WFI but that those payments were not toward the loan at issue, she is obligated to at least admit in part each request for admission no. 4-23. *See* Fed. R. Civ. P. 36(a)(4) ("A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.").

Additionally, Plaintiff claims to have never received the loan and claims to have never made payments towards the loan, while simultaneously claiming she made interest payments towards the loan balance while it was deferred. *Schick Decl.*, DE 19-1, p. 3, ¶¶ 11, 17, and *O'Meara Decl.*, ¶ 4 and Ex. A at p. 6, 21, Int. Resp. 9, RFA Resp. 9. Specifically, her response to the request "ADMIT you did not make any interest payments on the Student Loan while it was in deferral status" is an objection and an unqualified denial. *O'Meara Decl.*, ¶ 4 and Ex. A at p. 21, RFA Resp. 26. Her claim that she never received the loan and never paid payments towards the loan balance, on the one hand, and her claim that she made interest payments towards the loan while it was in deferral status, on the other hand, cannot simultaneously be true. Plaintiff simply cannot take two contradictory positions on material issues and then claim those issues are decided and the Court must rule in her favor.

Plaintiff also admits to owing the debt to SLS in her 2018 telephone call to WFI. *WFI Decl.*, ¶¶ 13-14 and Ex. B at Call Trans., p. 2. Although she submitted a declaration in claiming she never took out the loan, she does not explain why she acknowledged owing the loan to SLS during that telephone call. While "a party might be able to explain away his prior inconsistent statements…if he makes no attempt at explanation, he is stuck with those statements." *Seshadri*

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

*v. Kasraian*, 130 F.3d 798, 804 (7th Cir. 1997).  Plaintiff's unexplained prior admission contradicts her sworn declaration.  Because she has not explained that admission, she is bound by it and her motion should therefore be denied.

c. __The Pre-suit Communications Are Not Actionable__

Plaintiff's claims fall into two general categories.  One relates to SLS filing a lawsuit to collect her student loan originating with Bank of America, which she now contends she does not owe.  For the reasons explained *supra* and *infra*, Plaintiff is not entitled to summary judgment with respect to that claim.  The other claim relates to the pre-suit communications provided by the undersigned on behalf of SLS.  As explained herein, Plaintiff's claims based on those communications are not actionable.

i. **FDCPA**

Plaintiff asserts SLS violated the Fair Debt Collection Practices Act ("FDCPA"), specifically asserting violations of 15 U.S.C. §§ 1692e, 1692e(2), 1692f, and 1692f(1).  DE 19, pp. 11-13.  15 U.S.C. § 1692e states, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  The statute provides a non-exhaustive list of violative conduct, including "[t]he false representation of the character, amount, or legal status of any debt…" 15 U.S.C. § 1692e(2)(a).  Section 1692f of the FDCPA states, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  The statute also provides a non-exhaustive list of violative conduct, including "[t]he collection of any amount…unless such amount ie expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).

Plaintiff's claims under 15 U.S.C. §§ 1692e and 1692e(2) that the documents provided are misleading is not actionable because Plaintiff never relied on the alleged misrepresentation.  The

Defendant's Opposition to Partial Summary Judgment

PAGE 18

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

Ninth Circuit recently concluded that a plaintiff who does not rely on alleged misstatements lacks standing to pursue an FDCPA claim for the alleged misstatements.[4]  *See Adams v. Skagit Bonded Collectors, LLC*, 836 Fed. Appx. 544 (9th Cir. 2020).  The court said:

> Adams has not alleged actual harm or a material risk of harm to the interests protected by the FDCPA.  Nothing in the Complaint suggests he took or forewent any action because of the allegedly misleading statements in the letters.  Rather, the Complaint includes a bare allegation of confusion.  Without more, confusion does not constitute an actual harm to Adam's concrete interests.  Nor do Adam's allegations suggest a material risk of harm to his interests.  Although his supplemental brief offers a series of examples in which a hypothetical consumer might detrimentally rely on an allegedly misleading creditor identification, the Complaint does not support an inference that *Adams himself* was ever at risk of detrimental reliance.

*Id.* at 547 (citations and quotation marks omitted, emphasis in original).  This case is simply another in a series of cases finding an FDCPA plaintiff lacks standing absent a harm or risk of harm.  *See, e.g., Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990 (11th Cir. 2020) and *Casillas v. Madison Ave. Assoc., Inc.*, 926 F.3d 329 (7th Cir. 2019).

To be clear, the issue of the propriety of filing SLS's lawsuit against Plaintiff is separate and addressed otherwise herein.  However, the issue of the pre-suit communications being misleading is not actionable for the simple reason that Plaintiff never took action in reliance on them.  Instead, with the exception of exercising her statutory rights, she herself acknowledges she only took action after she was sued.  *Schick Decl.*, DE 19-1, pp. 3-4, ¶¶ 19, 21.  She does not identify any reliance or any other action she took or failed to take because alleged misrepresentations.  Accordingly, those claims are not actionable.

The same is true with respect to her claims under 15 U.S.C. §§ 1692f and 1692f(1), to the extent such claims are based on the attorney fee calculation provided.  *See Schick Decl.*, DE 19-1,

---

[4] "[T]he jurisdictional issue of standing can be raised at any time…"  *U.S. v. Viltrakis*, 108 F.3d 1159, 1160 (9th Cir. 1997) (citation omitted).

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

1      p. 12.  Again, the propriety of seeking to collect the loan balance and filing suit on the same are

2      otherwise addressed herein.  Plaintiff relies on *McCollough v. Johnson, Rodenburg & Lauinger,*

3      *LLC*, 637 F.3d 939 (9th Cir. 2011) in an attempt to support her claim.  Such reliance is misplaced.

4      There, the defendant filed a lawsuit against the plaintiff which requested attorney's fees and the

5      court "concluded that [defendant] failed to meet its burden to show a genuine issue for trial because

6      it presented no admissible evidence of a contract authorizing a fee award." *Id.* at 950.  Here,

7      Plaintiff has already identified an agreement authorizing the collection of attorney's fees. *See* DE

8      1-1, pp. 22-26 and *Schick Decl.*, DE 19-1, pp. 16-20.  Specifically, it states: "[t]o the extent

9      permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit

10     Agreement, including reasonable collection agency and attorney's fees and court costs and other

11     collection costs." DE 1-1, p. 24, ¶ E.6 and *Schick Decl.*, DE 19-1, p. 18, ¶ E.6.  This case is

12     therefore unlike *McCollough*.  Moreover, the agreement does not require the filing of a lawsuit as

13     a prerequisite to collecting attorney's fees.

14

15           To the extent Plaintiff bases her claim on the amount contained in the attorney fee

16     calculation provided, her claims are not actionable because SLS did not seek this amount in the

17     complaint it filed. *See* DE 1-1, pp. 31-32 *Schick Decl.*, DE 19-1, pp. 23-24.  Instead, SLS only

18     sought any statutory attorney's fees to which it might be entitled. *Id.*  Therefore, any risk

19     associated with the amount of attorney's fees in document provided had dissipated before Plaintiff

20     filed suit and is no longer actionable. *See Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990,

21     1003 (11th Cir. 2020) ("Even if Trichell and Cooper were placed at risk of being defrauded when

22     they received their collection letters, the risk never materialized, had dissipated before the

23     complaints were filed, and cannot possibly threaten any future concrete injury.  For this additional

24     reason, Trichell and Cooper cannot show Article III standing based on a risk of injury.").  Since

25

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

the complaint did not seek the amount identified in the attorney's fees calculation, the risk associated with identifying that amount has dissipated and that claim is not actionable.   The propriety of filing a lawsuit at all is addressed otherwise herein.

## ii.   State Law Claims

Plaintiff alleges SLS violated the Washington Collection Agency Act ("WCAA"), as enforced through the Washington Consumer Protection Act ("CPA").   The Washington Supreme Court has said:

> [T]o prevail in a private CPA action and therefore be entitled to attorney fees, a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.

*Hangman Ridge Training stables, Inc. v. Safeco Title Ins. Co.* (105 Wash.2d 778, 780, 719 P.2d 531, 533 (Wash. 1996) (*en banc*).   Plaintiff asserts "[s]imply consulting an attorney is sufficient to show injury."   DE 19, p. 17 (citing *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412 (2014) (citing *Panag v. Farmers Ins. CO. of Wash.*, 166 Wn2d 27, 62) (2009))).   The only injury Plaintiff claims is "her expenses in seeking counsel to determine her legal rights and responsibilities…" which she contends "suffices for purposes of establishing this element."   DE 19, p. 17.

The problem is that Plaintiff acknowledges she only consulted with counsel **after** being served with the lawsuit.   *Schick Decl.*, p. 3-4, ¶ 19.   She also identifies money spent to send a dispute letter to SLS through counsel.   *Schick Decl.*, p. 4, ¶ 21.   The letter to which this dispute was sent identifies the amount of the debt and the current creditor but says nothing of attorney's fees.   *Schick Decl.*, DE 19-1, p. 8.   Any claimed liability with respect to this letter or the filing of the lawsuit under the WCAA and the CPA hinge entirely on whether Plaintiff actually took out the loan.   As explained more thoroughly herein, the Court cannot decide that issue at this juncture.

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

1
2   Otherwise, Plaintiff attempts to assert her claims based on the documents provided on or about
3   July 7, 2020.  *Schick Decl.*, DE 19-1, pp. 10-21.  Any claim with respect to these documents fails
4   as a matter of law because Plaintiff identifies no injury associated with her receipt of these
5   documents.  Since Plaintiff's remaining argument hinges on her FDCPA claim, SLS incorporates
6   by reference its other arguments set forth herein.

**d.  Plaintiff's Motion is Premature and Otherwise Fails Regarding SLS's Lawsuit**

7
8        Plaintiff's claims are largely based on SLS's filing of a lawsuit against her.  As an initial
9   matter, the filing of a lawsuit in and of itself does not violate the FDCPA even if a creditor does
10  not ultimately succeed in the lawsuit.  *See, e.g., Heintz v. Jenkins*, 514 U.S. 291, 296 (1995) ("[W]e
11  do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make
12  the bringing of it an 'action that cannot legally be taken.'").  Instead, her claims are based on her
13  contention she never received the loan.  To that extent, Plaintiff's motion is premature because the
14  state court lawsuit is still pending.  Since the state court acquired jurisdiction first, it should be
15  able to adjudicate the issue of whether Plaintiff received the loan.  Otherwise, bout courts could
16  reach inconsistent conclusions.

17        Even if the Court disagrees, however, Plaintiff's motion must be denied because Plaintiff
18  has not established she does not owe the loan.  She declares under penalty of perjury that she did
19  not get the loan and her expenses were covered by her financial aid package.  However, the
20  document she provides to corroborate this statement shows her financial aid fell woefully short of
21  covering her living expenses.  SLS contends these excess expenses were covered by the loan she
22  is now disavowing and Plaintiff provides no alternative explanation or funding source.  She also
23  listed the loan on a bankruptcy petition in the exact amount then owed, made twenty payments
24  towards the loan balance, and admitted to owing the loan to SLS.  The Court simply cannot
25

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

1   conclude Plaintiff did not receive the loan based on the evidence submitted, especially when

2   Plaintiff fails and refuses to provide what may well be the best evidence.  Viewing the facts in the

3   light most favorable to SLS, as the Court must, Plaintiff simply has not carried her burden and her

4   motion should be denied.

5   **e.  <u>SLS has a Bona Fide Error Defense</u>**

6           Contrary to Plaintiff's assertion, SLS does have a bona fide error defense to the extent

7   Plaintiff bases her claims on not receiving the loan in question.  SLS has provided supplemental

8   discovery responses regarding this defense.  *See O'Meara Decl*, ¶ 16 and Ex. C.  Prior to placing

9   and account with counsel for litigation, SLS has WFI conduct a review to determine whether the

10  account is suitable for litigation.   *See O'Meara Decl*, ¶ 16 and Ex. C, *SLS Decl.*, ¶¶ 34-36, and

11  *WFI Decl.*, ¶¶ 13-18.  WFI reviewed the documentation SLS received from Bank of America, as

12  well as its internal notes and Plaintiff's payment history.  *Id.*  The documents SLS received from

13  Bank of America indicate that Plaintiff applied for and obtained a student loan.  *SLS Decl.*, ¶¶ 19,

14  22.  SLS did not receive any documents from Bank of America which would suggest or indicate

15  that the loan was not provided or that Plaintiff disputed the loan.  *SLS Decl.*, ¶ 10.  Prior to placing

16  the account with counsel, WFI has no record of Plaintiff ever having disputed the loan and no

17  record of Plaintiff ever having claimed to not have received the loan.  *WFI Decl.*, ¶ 17.  To the

18  contrary, WFI has telephone call recordings in which Plaintiff acknowledges owing the loan.  *WFI*

19  *Decl.*, ¶¶ 13-14, 17.  After reviewing all this documentation and information, and relying on same,

20  WFI determined the account was suitable for placement with counsel to file a lawsuit, and the

21  account was then placed with counsel.  *O'Meara Decl*, ¶ 16 and Ex. C, *SLS Decl.*, ¶¶ 35-36, *WFI*

22  *Decl.*, ¶ 18.  Accordingly, if and to the extent Plaintiff did not receive the funds as she contends,

23  then attempting to collect a loan not owed was a result of a bona fide error notwithstanding

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

procedures reasonably adapted to avoid such an error.  *See* 15 U.S.C. § 1692k(c) ("A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.").  Plaintiff's motion should therefore be denied.

### f.   Defendant is Entitled to Additional Discovery

SLS has substantially detailed the deficiencies in Plaintiff's discovery responses *supra*.  In addition to taking inconsistent and contradictory positions, she is also unwilling to admit to basic and straightforward facts.  Incredibly, when asked to admit that language quoted verbatim from one of the exhibits to her complaint appears in the exhibit, her responses were objections and unqualified denials.  *O'Meara Decl.*, ¶ 4 and Ex. A at p. 20-21, RFA Resp. 24-25.  The only reasonable conclusions is that Plaintiff is intentionally obfuscating the facts, and the only reasonable way to bring those facts to light is through additional discovery.

SLS believes the Court has sufficient grounds to substantively deny Plaintiff's motion.  If the Court disagrees then, pursuant to Fed. R. Civ. P. 56(d), it should deny or defer ruling on Plaintiff's motion because necessary facts are unavailable to SLS at this time.  *See O'Meara Decl.*, ¶¶ 6-15 and Ex. A-B, and *Declaration of Chad V. Echols* (*"Echols Decl."*), ¶¶  3-13.  At a minimum, SLS needs Plaintiff's bank statements from the time the loan was disbursed and needs to depose her.  *O'Meara Decl.*, ¶ 14 and *Echols Decl.*, ¶ 12  Importantly, Plaintiff failed to produce her bank statements despite the fact she did not object to the request, and despite the fact that she claimed to have produced them.  *O'Meara Decl.*, ¶¶ 4, 6-7 and Ex. A at p. 26, RFP Resp. 14, and Ex. B at SHICK000001-000131.  In an attempt to obtain these records, the undersigned sent a letter to opposing counsel and co-counsel issued a subpoena directly to the bank.  *O'Meara Decl.*,

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

¶¶ 9, 11 and *Echols Decl.*, ¶¶ 5, 9 and Ex. A-B.  Further, given Plaintiff's difficulty in providing consistent responses, it is clear that SLS needs to depose her.  SLS has not yet noticed her deposition because of the belief that it would be most useful to do so after receiving all the relevant documentation.  *O'Meara Decl.*, ¶ 12 and *Echols Decl.*, ¶ 10.

SLS has been diligent in obtaining discovery, having served written discovery approximately three weeks (22 days, to be exact) after the filing of the joint status report and discovery plan.  *See* DE 12 and *O'Meara Decl.*, ¶¶ 3, 15 and *Echols Decl.*, ¶ 13.  After reviewing Plaintiff's responses, SLS timely sent a letter detailing the deficiencies.  *O'Meara Decl.*, ¶ 9 and *Echols Decl.*, ¶ 7.  SLS has sought some of the relevant documentation from another source.  *O'Meara Decl.*, ¶ 11 and *Echols Decl.*, ¶ 9 and Ex. A-B. Finally, SLS needs to depose Plaintiff given her unwillingness to admit basic facts and her inconsistent and contradictory responses. Depending on what SLS receives back from its subpoena and depending on Plaintiff's testimony, additional discovery may also be warranted.  Given that there are six and a half months left in the discovery period, SLS has sufficient time to obtain such discovery and should be given the opportunity to do so.  Pursuant to Fed. R. Civ. P. 56(d), the Court should therefore deny Plaintiff's motion, defer ruling on Plaintiff's motion until the close of discovery, or issue another appropriate order permitting SLS to gather additional information to refute Plaintiff's contentions.

## V.      CONCLUSIONS

Plaintiff is not entitled to partial summary judgment on her claims.  She is estopped from asserting she never received the loan at issue because her prior actions are consistent with her having received the loan.  Moreover, she cannot make such a bare assertion while simultaneously failing and refusing to provide relevant documentation which would almost certainly refute or corroborate her claim.  Plaintiff's own evidence creates questions of material fact rendering

Defendant's Opposition to Partial Summary Judgment

PAGE 25

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

summary judgement inappropriate.   At a minimum, additional discovery is necessary to fully establish the facts necessary to oppose Plaintiff's motion.   The Court should therefore deny Plaintiff's motion or, alternatively, defer considering the motion until the close of discovery.

This the 2nd day of April, 2021.                          Respectfully submitted,

                                                                         _____/s  Michael S. O'Meara_____

Michael S. O'Meara/WSBA No. 41502
Attorney for the Defendant

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 2, 2021, a copy of the foregoing Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment was filed electronically.  Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system, including on Plaintiff's counsel as follows:

PARTIES SERVED:

T. Tyler Santiago                           Christina L. Henry
Jason D. Anderson                          Henry & DeGraaff, P.S.
Anderson Santiago, PLLC                787 Maynard Ave, S
787 Maynard Ave, S                        Seattle, WA 98104
Seattle, WA 98104

_____/s  Michael S. O'Meara_____
Michael S. O'Meara/WSBA No. 41502
Attorney for the Defendant

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM