1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

AMANDA SCHICK,

              Plaintiff,

  v.

STUDENT LOAN SOLUTIONS, LLC,

              Defendant.

Civil Action No. 2:20-cv-01529-BJR

**DECLARATION OF STUDENT LOAN SOLUTIONS, LLC IN OPPOSITION TO PARTIAL SUMMARY JUDGMENT**

16

Christopher P. Ruh declares as follows:

17
18

1.  I am over eighteen years of age, of sound mind, and fully competent to make this declaration.

19
20
21
22
23
24
25

2.  I am an authorized agent for and the general manager of Student Loan Solutions, LLC ("SLS") and in that role, have full access to and personal knowledge of SLS's business records, including those records SLS acquired from its immediate predecessor in interest, Bank of America, N.A. ("Bank of America"). These records are regularly and contemporaneously created and maintained in the ordinary course of business. This declaration is based on my personal knowledge and knowledge acquired from my review of those records.

Declaration of Student Loan Solutions, LLC

PAGE 1

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

3. On October 31, 2017, SLS entered into "Loan Sale Agreement" with Bank of America to purchase a portfolio of student loans.  A true and correct copy of the Loan Sale Agreement (with redactions for confidentiality and privacy) is attached hereto as **Exhibit A.**

4. Pursuant to the Loan Sale Agreement, Bank of America was to provide, and did provide, loan documents for the purchased loans which include account numbers, an itemization of the balanced owed, the date of each borrower's last payment, the date of first delinquency, the date of charge off, any information regarding unresolved disputes and fraud claims, any information regarding any settlements or other arrangements agreed to, information regarding collection efforts, as well as the borrower's name, address, and social security number.  *See* Exhibit A, SLS Document Production Bates 0062.

5. Included as an attachment to the Loan Sale Agreement is a document titled "BILL OF SALE," pursuant to which Bank of America granted, sold, assigned, and conveyed to SLS all rights, title, and interest of Bank of America in the loans described in "Annex I."  *See* Exhibit A, SLS Document Production Bates 0097.

6. Also included as an attachment to the Loan Sale Agreement is a document titled "BLANKET ENDORSEMENT OF STUDENT LOAN PROMISSORY NOTES," pursuant to which Bank of America endorsed all promissory notes relating to the student loans SLS purchased, as identified in "Annex I."  *See* Exhibit A, SLS Document Production Bates 0101.

7. Also included as an attachment to the Loan Sale Agreement is a document titled "Annex I," which identifies a computer file containing all the loans purchased by SLS

Declaration of Student Loan Solutions, LLC

PAGE 2

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

from Bank of America.  *See* Exhibit A, SLS Document Production Bates 0103.

8.  Also included as an attachment to the Loan Sale Agreement is a redacted portion of the printout of the compute file designated as "Annex I," which identifies a loan owed by Plaintiff Amanda Schick ("Plaintiff").  *See* Exhibit A, SLS Document Production Bates 0104.  Due to the size of the file and the amount of personally identifiable information for other borrowers, only the page identifying Plaintiff's loan is included.

9.  The documents provided by Bank of America with respect to Plaintiff include a document titled "Loan Request/Credit Agreement," which is attached as **Exhibit B**, a document titled "NOTE DISCLOUSRE STATEMENT", which is attached as **Exhibit C**, and a document titled "Payment History," which is attached as **Exhibit D.**  All documents provided by Bank of America to SLS were provided in a non-modifiable format.

10.  None of the documents provided by Bank of America with respect to Plaintiff include a notation or any other indication that Plaintiff disputed the account or that Plaintiff claimed to have not received the loan.

11.  The Loan Request/Credit Agreement includes a signature page which appears to be signed by Plaintiff, with a fax number at the bottom with a 503 area code.  *See* Exhibit B, SLS Document Production Bates 0001.  The Loan Request/Credit Agreement also includes a blank signature page and four pages of terms and conditions.  *See* Exhibit B, SLS Document Production Bates 0002-0006.

12.  The signature page of the Loan Request/Credit Agreement which appears to be executed by Plaintiff includes a document identification number of "BK.07-08.CRWO.10DC.O107" in both the text of the page and at the bottom.  *See* Exhibit B,

SLS Document Production Bates 0001.

13. The blank signature page of the Loan Request/Credit Agreement also includes a documentation identification number of "BK.07-08.CRWO.10DC.0107" in both the text of the page and at the bottom. *See* Exhibit B, SLS Document Production Bates 0002.

14. The terms and conditions pages of the Loan Request/Credit Agreement also include a documentation identification number of "BK.07-08.CRWO.10DC.0107" at the bottom of each page. *See* Exhibit B, SLS Document Production Bates 0003-0006.

15. Both the executed signature page and the blank signature page include the following language:

> By my signature, I certify that I have read, understand and agree to the terms and undertake the obligations set forth on all five (5) pages of this Loan Request/Credit Agreement BK.07-08.CRWO.10DC.0107 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is singed under seal. I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

*See* Exhibit B, SLS Document Production Bates 0001-0002.

16. The terms and conditions include the following language:

> If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax

Declaration of Student Loan Solutions, LLC

PAGE 4

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

If I elect to sign electronically an electronic record of Credit Agreement, then the following will apply as between Lender and me: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.

*See* Exhibit B, ¶¶ L.15 and L.16, SLS Document Production Bates 0005.

17. The executed signature page of the Loan Request/Credit Agreement and the blank signature page and terms and conditions of the Loan Request/Credit Agreement were all provided by Bank of America to SLS in a non-modifiable format.

18. The executed signature page of the Loan Request/Credit Agreement and the blank signature page and terms and conditions of the Loan Request/Credit Agreement therefore constitute the complete Loan Request/Credit Agreement between Plaintiff and Bank of America.

19. The fact that Bank of America provided SLS with an executed signature page for the Loan Request/Credit Agreement which bears a signature which appears to be Plaintiff's, and which also bears a stamp showing it was faxed indicates that Plaintiff applied for the loan with Bank of America.

20. The terms and conditions of the Loan Request/Credit Agreement also states:

**HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as

Declaration of Student Loan Solutions, LLC

PAGE 5

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

required by law, at the time the loan proceeds are disbursed.  The Disclosure Statement is incorporated herein by reference and made a part hereof.  The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information.  I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburse the loan proceeds; or (b) using or allowing the loan proceeds to be used on my behalf without objection.  Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions.  **If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan.  To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement.**  If loan proceeds have been disbursed, I agree that I will immediately return the loan proceed to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return many loan proceeds to you.  If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be cancelled and I will be in default of this Credit Agreement. (See Paragraph I.)

*See* Exhibit B, ¶ B.2, SLS Document Production Bates 0003.

21. The Note Disclosure Statement identifies Plaintiff and her then current address, identifies that $30,000.00 was disbursed to Plaintiff, and identifies an origination fee of $3,519.55.  *See* Exhibit C, SLS Document Production Bates 0007.

22. The fact that Bank of America provided SLS with a Note Disclosure Statement addressed to Plaintiff indicates that Bank of America provided the funds to Plaintiff.

23. The executed signature page of the Loan Request/Credit Agreement states: "Repayment Option: Full Deferral."  *See* Exhibit B, SLS Document Production Bates 0001.

24. The terms and conditions of the Loan/Request/Credit Agreement state:

Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment options is stated on the first page of this Credit Agreement), I am not obligated to make payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of

Declaration of Student Loan Solutions, LLC

PAGE 6

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period.  Interest that is added to principal is called "Capitalized" Interest.   Capitalized Interest will be treated as principal.  In addition, if I am in default (see Paragraph I) and the loans has been sold to TERI (see Paragraph L. 12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan.  I understand that you will also add all accrued and unpaid interest to the principal balance of my loan at the end of any forbearance period (see Paragraph H).

*See* Exhibit B, ¶ D.3, SLS Document Production Bates 0003.

25. Bank of America also provided SLS with a payment history for Plaintiff's loan, which is attached as **Exhibit D.**

26. The payment history provided shows that Plaintiff did not make any payments directly to Bank of America.  *See* Exhibit D, SLS Document Production Bates 0010-0011.

27. The payment also shows the dates the loan was disbursed and the dates interest capitalized.  *See* Exhibit D, SLS Document Production Bates 0010-0011.

28. The payment history indicates that on January 1, 2010, interest in the amount of $591.42 capitalized, leaving an outstanding principal balance of $40,338.51.

29. SLS contracted with Williams & Fudge, Inc. ("WFI") to have WFI securely store all borrower documents received from Bank of America due to WFI's experience in student loan collections, and because of its sophisticated information technology infrastructure and its ability to safe-guard confidential material.

30. All borrower documents received from Bank of America, including those for Plaintiff, were immediately provided to WFI for storage and safe keeping, and the documents have remained with WFI since acquisition.

31. SLS has not received any notices from WFI regarding any sort of data breech or potential data breech with respect to the documents.

32. In addition to storing documents, SLS also placed certain of the accounts acquired from

Declaration of Student Loan Solutions, LLC

PAGE 7

Bank of America with WFI for collection.

33. SLS placed Plaintiff's account with WFI for collection.

34. When WFI's collection attempts were unsuccessful, Plaintiff's account was placed with counsel to file a lawsuit.

35. Prior to placing Plaintiff's account with counsel, WFI reviewed the account at SLS's request to determine whether it was suitable for placement with counsel.

36. Based on the information in its possession, WFI made the determination that the account was suitable to be placed with counsel.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES AND THE STATE OF WASHINGTON THAT THE FOREGOING IS TRUE AND CORRECT.

DATED this 2nd day of April, 2021 at Rock Hill, SC.

Christopher P. Ruh

Declaration of Student Loan Solutions, LLC

PAGE 8

THE O'MEARA LAW OFFICE
1602 VIRGINIA AVE
EVERETT, WA 98201
MICHAEL@OMEARALAWOFFICE.COM

# EXHIBIT A

CONFIDENTIAL

SLS Document Production Bates 0060
Execution Version

# LOAN SALE AGREEMENT

This LOAN SALE AGREEMENT (the "Agreement") made and entered into as of October 31, 2017 (the "Effective Date"), by and among STUDENT LOAN SOLUTIONS, LLC, a South Carolina limited liability company ("Purchaser") and BANK OF AMERICA, N.A, a national banking association ("Seller").

WHEREAS, Seller desires to sell to Purchaser, and Purchaser desires to purchase from Seller, a portfolio of non-performing private student loans on the initial Purchase Date and the additional non-performing private student loans that are GATE/TERI Repurchase Loans (as defined below) from time to time thereafter on the applicable Purchase Date, in each case, on the terms and conditions set forth in this Agreement;

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained, the parties agree as follows:



CONFIDENTIAL
SLS Document Production Bates 0061



CONFIDENTIAL

SLS Document Production Bates 0062

"Loan Documents" means, with respect to a Purchased Loan, all documents and other documentation or information relating to such Purchased Loan that have been delivered to or created by or on behalf of Williams & Fudge, Sunrise or any other servicer or collection agent engaged by or on behalf of Seller, or are in the possession of Seller as of the applicable Purchase Date, whether in paper, electronic, digital, or other form or format, including:

(i)     a copy of the executed loan application and Note or other documentation evidencing the indebtedness represented by such Purchased Loan; and

(ii)    records reflecting:

   a.   account numbers used by Seller to identify such Purchased Loan;

   b.   an itemized account of all amounts owing in connection with such Purchased Loan, including the principal balance, interest, and all fees;

   c.   (A) the date and amount of the Borrower's last payment, (B) for all Purchased Loans that were charged-off in August 2010 or thereafter, the date of first delinquency, and (C) the date of charge-off and amount owed and not paid on such date (if available);

   d.   information regarding unresolved disputes and fraud claims made by the Borrower, if any;

   e.   information regarding the terms of settlements or other arrangements agreed to with the Borrower, if any;

   f.   information regarding servicing and collection efforts by any servicer or agent on behalf of Seller made through the applicable Purchase Date; and

   g.   the Borrower's name, address, and Social Security number.



"Note" means the promissory note or credit agreement (or electronic copy thereof) or other writing or record evidencing a Loan, together with all supplements and modifications thereto.

3

CONFIDENTIAL

"Portfolio File" means any of the Initial Portfolio File or any Purchase Date Portfolio File delivered pursuant to Section 1(b) or (c) hereof and, with respect to any Purchased Loan, means the Portfolio File which includes information with respect to such Purchased Loan.



"Purchase Date" means with respect to a Purchased Loan, the date of transfer and payment under Section 1 of this Agreement with respect to such Purchased Loan. The initial Purchase Date hereunder shall be the Initial Purchase Date.

"Purchase Date Loan Schedule" means a listing of Loans to be sold pursuant to Section 1(b) or (c) hereof and, with respect to any Purchased Loan, means the Purchase Date Loan which includes such Purchased Loan.

"Purchase Date Portfolio File" means, with respect to a Loan, a loan portfolio data file set forth in an electronic file, reflecting loan characteristics of such Loan as of the date specified therein, including substantially the same scope of information with respect to such Loan as was provided in the Initial Portfolio File with respect to the Initial Purchased Loans included therein.



4

CONFIDENTIAL

SLS Document Production Bates 0064



"Purchased Assets" means the following with respect to any Purchased Loan: (1) the Note relating to such Purchased Loan and related Loan Documents; (2) the servicing rights relating to such Purchased Loan; and (3) all collections, revenues and recoveries from such Purchased Loan, including all Borrower payments, to the extent due on such Purchased Loans as of the related Cut-Off Time.

"Purchased Loan" means the Initial Purchased Loans and each of the other Loans sold by Seller to Purchaser hereunder (but excluding any TERI Cured Repurchase Loan acquired by Seller pursuant to Section 12 hereof).



CONFIDENTIAL
SLS Document Production Bates 0065



SECTION 1.   Purchase and Sale of Initial Purchased Loans; Forward Flow Purchases of GATE/TERI Repurchase Loans.

(a)    On October 31, 2017, or such other date as Purchaser and Seller may mutually agree (the "Initial Purchase Date"), Seller shall sell to Purchaser all of Seller's right, title and

6

**CONFIDENTIAL**

SLS Document Production Bates 0066

interest in and to the Loans identified on the Initial Purchased Loan Schedule (the "Initial Purchased Loans") and the related Purchased Assets.  Purchaser shall purchase the Initial Purchased Loans and the related Purchased Assets from Seller at a purchase price equal to the Purchase Price for the Initial Purchased Loans as such Purchase Price is determined on the Initial Purchase Date based upon the Loan Balances set forth in the Pre-Sale Report (the "Estimated Purchase Price").  Except as expressly provided in Section 2(a)(vi), Purchaser agrees to purchase the Initial Purchased Loans on an "as is, where is" basis "with all faults" on the Initial Purchase Date.  Purchaser shall pay the Estimated Purchase Price for the Initial Purchased Loans not later than 4:00 p.m. (Eastern time) by wire transfer of immediately available funds on the Initial Purchase Date to such account as Seller shall direct in writing to Purchaser.



CONFIDENTIAL

SLS Document Production Bates 0067



(d)     Each purchase and sale of Purchased Loans hereunder shall be without recourse (except as otherwise expressly set forth in this Agreement) and shall be evidenced by a Bill of Sale and Blanket Endorsement duly executed and delivered by Seller on the applicable Purchase Date.

(f)     Each transfer of Purchased Loans hereunder shall constitute a sale and assignment to Purchaser of such Purchased Loans.  As purchaser of the Purchased Loans, Purchaser shall be entitled to receive: (i) interest and principal payments on the Purchased Loans from and after the applicable Cut-Off Time, (ii) any and all other payments, funds, collections and recoveries of every type received by Seller or any servicer or collection agent on behalf of Seller from the Borrowers of the Purchased Loans or others pursuant to, or in respect of, the Purchased Loans from and after the applicable Cut-Off Time, and (iii) the servicing rights with respect to the Purchased Loans, and all proceeds of the foregoing.  In addition, as purchaser of the Purchased

CONFIDENTIAL
SLS Document Production Bates 0068

Loans, Purchaser shall bear the risk of future performance of the Purchased Loans from and after the applicable Cut-Off Time, including risk of non-payment and total loss.  Purchaser acknowledges and agrees that the applicable purchase price specified under this Section 1 for the Purchased Loans reflects the quality of the assets (including any faults, defects or other adverse matters that may be associated with the Purchased Loans) and the "as is, where is" and "with all faults" nature of the sale.  Purchaser further acknowledges and agrees that it has been fully informed as to the nature of the Purchased Loans, including that the Purchased Loans are in default, many have been in default for a significant period of time and that the Initial Purchased Loans have been charged-off by Seller, and each other Purchased Loan will have been charged-off, and has agreed to purchase them as contemplated by this Agreement.

SECTION 2.   Representations and Warranties of Seller.

(a)     Seller represents and warrants to Purchaser as of the Effective Date and each Purchase Date as follows:

(i)     Seller is a national banking association duly organized, validly existing and in good standing under the laws of the United States of America and has all requisite legal authority to enter into and perform its obligations under this Agreement and to sell and assign the Loans and the rights relating thereto to Purchaser under the terms hereof.

(ii)     The execution and delivery of this Agreement by Seller, the consummation of the transactions contemplated hereby and the performance by Seller of its obligations under this Agreement have been duly authorized, and this Agreement has been validly executed and delivered, by Seller.

(iii)     Assuming due authorization, execution and delivery by Purchaser, this Agreement constitutes the legal, valid and binding obligation of Seller, enforceable against Seller in accordance with the terms hereof, except as such enforceability may be limited by bankruptcy, insolvency or similar laws affecting the enforcement of creditors' rights generally and except as such enforceability may be limited by general principles of equity (whether considered in a suit at law or in equity).



CONFIDENTIAL

(vi)    With respect to each Purchased Loan as of the related Cut-Off Time:

(A)    Seller has good and valid title to and is the sole owner of such Loan, free and clear of any pledges, liens, adverse claims or similar encumbrances, except in the case of TERI First Repurchase Loans, for Seller's obligation to resell such Loans to the applicable securitization trust under the related TERI Repurchase Agreement; and Seller has transferred all of Seller's right, title and interest in, to and under such Loan to Purchaser.

(B)    The information presented with respect to such Loan in the applicable Portfolio File in the data fields specified on Exhibit D is true and correct in all material respects, as of the related Cut-Off Time.

(C)    Except as may be otherwise disclosed in the applicable Portfolio File, such Loan was originated and serviced, in each case, in compliance in all material respects with Applicable Laws and Regulations; provided that no representation or warranty is made with respect to the servicing of such Loan by any Third-Party Servicer.

(D)    Except as may be otherwise disclosed in the applicable Portfolio File, such Loan is the legal, valid and binding payment obligation of the Borrower thereunder, subject to (i) applicable bankruptcy, insolvency, reorganization, moratorium and fraudulent transfer laws, (ii) laws relating to or affecting creditors' rights generally (including the Servicemembers' Civil Relief Act), (iii) applicable statutes of limitation and (iv) general principles of equity (whether considered in a suit at law or in equity), and except with respect to any identity theft, fraud or forgery by the Borrower or cosigner, if any, that is discovered after the applicable Purchase Date.

(E)    Except as may be otherwise disclosed in the applicable Portfolio File, no counterclaim, offset or right of rescission has been asserted or threatened in writing by the Borrower thereof, except in each case (i) with respect to any identity theft, fraud or forgery by the Borrower or cosigner, if any, that is discovered after the applicable Purchase Date, (ii) solely with respect to Loans in respect of which there is a co-signor who at the time of origination had reached the age of majority, the other Borrower may have a defense of infancy and (iii) as a result of the application of any Debtor Relief Laws after the applicable Purchase Date.

10

CONFIDENTIAL

(F)     Seller has not waived, altered or modified any of the material terms, covenants or conditions of such Loan (or the related Note) except as reflected in the applicable Portfolio File or the related Loan Documents.



SECTION 3.   <u>Representations and Warranties of Purchaser</u>.  Purchaser represents and warrants to, Seller as of the Effective Date and each Purchase Date as follows:

(a)     Purchaser is a limited liability company duly organized, validly existing and in good standing under the laws of the State of South Carolina and has all requisite legal authority to enter into and perform its obligations under this Agreement and to purchase the Loans and the rights relating thereto from Seller under the terms hereof.

CONFIDENTIAL

(b)     The execution and delivery of this Agreement by Purchaser, the consummation of the transactions contemplated hereby and the performance by Purchaser of its obligations under this Agreement have been duly authorized, and this Agreement has been validly executed and delivered, by Purchaser.

(c)     Assuming due authorization, execution and delivery by Seller, this Agreement constitutes the legal, valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with the terms hereof, except as such enforceability may be limited by bankruptcy, insolvency or similar laws affecting the enforcement of creditors' rights generally and except as such enforceability may be limited by general principles of equity (whether considered in a suit at law or in equity).





**SLS Document Production Bates 0073**



14

CONFIDENTIAL

SLS Document Production Bates 0074



CONFIDENTIAL

SLS Document Production Bates 0075



CONFIDENTIAL



CONFIDENTIAL
SLS Document Production Bates 0077



CONFIDENTIAL

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████

SECTION 5.   Conditions of Purchase.

(a)      Purchaser's obligation to purchase and pay for the Purchased Loans hereunder on any Purchase Date shall be subject to the following conditions precedent:

(i)      All representations, warranties and statements by or on behalf of Seller contained in this Agreement shall be true in all material respects on, and as if made as of, such Purchase Date (unless any such representation and warranty is made only as of a specific date, in which event such representation or warranty shall be true in all material respects only as of such specific date);

(ii)      Seller shall be in compliance with the terms of this Agreement in all material respects;

(iii)      Seller shall have delivered to Purchaser on or before such Purchase Date (A) a Bill of Sale and Blanket Endorsement with respect to the applicable Purchased Loans, (B) copies of the Notes for such Purchased Loans and (C) in the case of the Initial Purchase Date, the Power of Attorney; and

████      ███████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████

(b)      Seller's obligation to sell Purchased Loans hereunder on any Purchase Date shall be subject to the following conditions precedent:

(i)      All representations, warranties and statements by or on behalf of Purchaser contained in this Agreement shall be true in all material respects on, and as if made as of, such Purchase Date (unless any such representation and warranty is made only as of a specific date, in which event such representation or warranty shall be true in all material respects only as of such specific date);

(ii)      Purchaser shall be in compliance with the terms of this Agreement in all material respects; and

(iii)      In the case of the Initial Purchase Date, Purchaser shall have paid to Seller the Estimated Purchase Price in accordance with Section 1(a).

███████████████████████████
████  ██  ███████████████████████████
████████████████████████████████████████████████████████████

CONFIDENTIAL   SLS Document Production Bates 0079



CONFIDENTIAL
SLS Document Production Bates 0080



CONFIDENTIAL
SLS Document Production Bates 0081



CONFIDENTIAL



SECTION 11. Power of Attorney. Seller hereby irrevocably appoints Purchaser and Purchaser's representatives (including without limitation Williams & Fudge, as Purchaser's servicer) as Seller's limited attorney-in-fact to endorse Seller's name upon (a) checks or other forms of payment received with respect to the Purchased Loans, and (b) any other notes, instruments, and other documents necessary to effect the transfers provided for herein. Seller shall execute and deliver to Purchaser a limited power of attorney in the form of Exhibit C attached hereto.

CONFIDENTIAL
SLS Document Production Bates 0083



SLS Document Production Bates 0084



CONFIDENTIAL

SLS Document Production Bates 0085



**CONFIDENTIAL**   **SLS Document Production Bates 0086**



**CONFIDENTIAL**   SLS Document Production Bates 0087



CONFIDENTIAL



29

CONFIDENTIAL
SLS Document Production Bates 0089



     (f)    This Agreement may be executed in one or many counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.  Such

**CONFIDENTIAL**

counterparts may be delivered by e-mail or other electronic copy.  Facsimile and .pdf signatures
shall be deemed valid and binding to the same extent as the original.



CONFIDENTIAL

SLS Document Production Bates 0091

(h)     This Agreement, and all rights benefits and obligations contained herein, shall not be assignable by either party, in whole or in part, without the express written consent of the other party.



(m)     This Agreement constitutes the entire understanding between the parties hereto with respect to the Purchased Loans and supersede all prior or contemporaneous oral or written communications regarding same.  The parties hereto understand and agree that no employee, agent or other representative of a party has any authority to bind such party with respect to any statement, representation, warranty or other expression unless said statement, representation, warranty or other expression is specifically included within the express terms of this Agreement.

[Remainder of page intentionally left blank]

CONFIDENTIAL

SLS Document Production Bates 0092

IN WITNESS WHEREOF, the parties have hereunto set their hands as of the day and year first above written.

BANK OF AMERICA, N.A.

By: _____

Name: Debra J. Minton

Title:  Senior Vice President

STUDENT LOAN SOLUTIONS, LLC

By: _____

Name: _____

Title: _____

Signature Page to Loan Sale Agreement

CONFIDENTIAL          SLS Document Production Bates 0093

IN WITNESS WHEREOF, the parties have hereunto set their hands as of the day and year first above written.

**BANK OF AMERICA, N.A.**

By: _____

Name: _____

Title: _____

**STUDENT LOAN SOLUTIONS, LLC**

By: _____

Name: Christopher P. Ruh

Title:  General Manager

Signature Page to Loan Sale Agreement

CONFIDENTIAL

SLS Document Production Bates 0094

*Exhibit A to*
*Loan Sale Agreement*

**[Identification of Purchased Loans Intended to be Purchased in Purchased Loan Portfolio/Numbers Are Approximations; Final Figures Will Appear on Bill of Sale]**

<u>**Number of Loans**</u>:

<u>**Number of Borrowers**</u>:

<u>**Aggregate Loan Balance**</u>:

Exh. A-1

CONFIDENTIAL

Annex I

[Identification of Purchased Loans Actually Purchased]

**Number of Loans:** █████

**Number of Borrowers:** █████

**Aggregate Loan Balance:** ██████████

all as more particularly shown in the loan listing set forth in the excel file titled "BANA Non-Performing Student Loan Tape (10.30.17.vF)" delivered by Seller to Purchaser on the Closing Date.

2

CONFIDENTIAL
SLS Document Production Bates 0096

*Exhibit B to*

*Loan Sale Agreement*

**BILL OF SALE**

FOR VALUE RECEIVED, BANK OF AMERICA, N.A. ("Seller"), pursuant to the terms and conditions of that certain Loan Sale Agreement dated as of October 31, 2017 (the "Agreement") by and between Seller and Student Loan Solutions, LLC, a South Carolina limited liability company ("Purchaser"), does hereby grant, sell, assign, transfer, and convey to Purchaser and its successors and assigns, all right, title, and interest of Seller in and to the following:  (1) the Loans described in Annex I attached hereto (the "Purchased Loans"); (2) all Notes relating to such Purchased Loans and related Loan Documents; (3) the servicing rights relating to such Purchased Loans; (4) all collections, revenues and recoveries of principal and interest from the Purchased Loans, including all Borrower payments, to the extent due or to become due on the Purchased Loans as of the related Cut-Off Time and (5) the proceeds of any of the foregoing, but excluding any proceeds of the sale made hereby.  All capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Agreement.

TO HAVE AND TO HOLD the same unto Purchaser, its successors and assigns, forever. This Bill of Sale is made pursuant to and is subject to the terms and provisions of the Agreement, and is without recourse, except as provided in the Agreement.

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed by one of its officers duly authorized to be effective as of the [●] day of [●], 20[●].

**BANK OF AMERICA, N.A.**

By: _____

Printed Name: _____

Title: _____

CONFIDENTIAL
SLS Document Production Bates 0097

## BILL OF SALE

FOR VALUE RECEIVED, BANK OF AMERICA, N.A. ("Seller"), pursuant to the terms and conditions of that certain Loan Sale Agreement dated as of October 31, 2017 (the "Agreement") by and between Seller and Student Loan Solutions, LLC, a South Carolina limited liability company ("Purchaser"), does hereby grant, sell, assign, transfer, and convey to Purchaser and its successors and assigns, all right, title, and interest of Seller in and to the following:  (1) the Loans described in Annex I attached hereto (the "Purchased Loans"); (2) all Notes relating to such Purchased Loans and related Loan Documents; (3) the servicing rights relating to such Purchased Loans; (4) all collections, revenues and recoveries of principal and interest from the Purchased Loans, including all Borrower payments, to the extent due or to become due on the Purchased Loans as of the related Cut-Off Time and (5) the proceeds of any of the foregoing, but excluding any proceeds of the sale made hereby.  All capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Agreement.

TO HAVE AND TO HOLD the same unto Purchaser, its successors and assigns, forever. This Bill of Sale is made pursuant to and is subject to the terms and provisions of the Agreement, and is without recourse, except as provided in the Agreement.

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed by one of its officers duly authorized to be effective as of the 31st day of October, 2017.

BANK OF AMERICA, N.A.

By: _____

Name:  Debra J. Minton

Title:  Senior Vice President

CONFIDENTIAL

SLS Document Production Bates 0098

*Exhibit B to*
*Loan Sale Agreement*
*(Continued)*

Annex I to Bill of Sale

[Identification of Purchased Loans Actually Purchased]

**Number of Loans**:

**Number of Borrowers**:

**Aggregate Loan Balance**:

all as more particularly shown in the loan listing reports attached hereto.

CONFIDENTIAL
SLS Document Production Bates 0099

Annex I

[Identification of Purchased Loans Actually Purchased]

**Number of Loans:** ███████

**Number of Borrowers:** ██████

**Aggregate Loan Balance:** ████████████

all as more particularly shown in the loan listing set forth in the excel file titled "BANA Non-Performing Student Loan Tape (10.30.17.vF)" delivered by Seller to Purchaser on the Closing Date.

CONFIDENTIAL

*Exhibit B to*
*Loan Sale Agreement*
*(Continued)*

## BLANKET ENDORSEMENT OF
## STUDENT LOAN PROMISSORY NOTES

Pursuant to the certain Loan Sale Agreement dated as of October 31, 2017 (the "Agreement") by and between the undersigned ("Seller") and Student Loan Solutions, LLC, a South Carolina limited liability company ("Purchaser"), Seller, by execution of this instrument, hereby endorses all promissory notes relating to the Loans purchased by Purchaser set forth in Annex I hereto.  This endorsement is in blank, unrestricted form.  Except as stated in the foregoing sentence, this endorsement is without recourse, except as provided under the terms of the Agreement.  All right, title, and interest of Seller in and to the promissory notes and related documentation identified in the Bill of Sale are transferred and assigned to Purchaser.  All capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Agreement.

This endorsement may be further manifested by attaching this instrument or a facsimile hereof to each or any of the promissory notes and related documentation acquired by Purchaser from Seller, or by attaching this instrument to the listing report referenced in Annex I hereto, as Purchaser may require or deem necessary.

Dated this [●] day of [●], 20[●].

**BANK OF AMERICA, N.A.**

By: _____

Printed Name: _____

Title: _____

Exh. B-3

CONFIDENTIAL
SLS Document Production Bates 0101

## BLANKET ENDORSEMENT OF
## STUDENT LOAN PROMISSORY NOTES

Pursuant to the certain Loan Sale Agreement dated as of October 31, 2017 (the "Agreement") by and between the undersigned ("Seller") and Student Loan Solutions, LLC, a South Carolina limited liability company ("Purchaser"), Seller, by execution of this instrument, hereby endorses all promissory notes relating to the Loans purchased by Purchaser set forth in Annex I hereto. This endorsement is in blank, unrestricted form. Except as stated in the foregoing sentence, this endorsement is without recourse, except as provided under the terms of the Agreement. All right, title, and interest of Seller in and to the promissory notes and related documentation identified in the Bill of Sale are transferred and assigned to Purchaser. All capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Agreement.

This endorsement may be further manifested by attaching this instrument or a facsimile hereof to each or any of the promissory notes and related documentation acquired by Purchaser from Seller, or by attaching this instrument to the listing report referenced in Annex I hereto, as Purchaser may require or deem necessary.

Dated this 31st day of October, 2017.

BANK OF AMERICA, N.A.

By: _____

Name:  Debra J. Minton

Title:  Senior Vice President

CONFIDENTIAL

SLS Document Production Bates 0102

*Exhibit B to*
*Loan Sale Agreement*
*(Continued)*

Annex I to Blanket Endorsement

[Identification of Purchased Loans Actually Purchased]

**Number of Loans**:

**Number of Borrowers**:

**Aggregate Loan Balance**:


all as more particularly shown in the loan listing reports attached hereto.

**CONFIDENTIAL**

Annex I

[Identification of Purchased Loans Actually Purchased]

**Number of Loans:** ███████

**Number of Borrowers:** ██████

**Aggregate Loan Balance:** ██████████████

all as more particularly shown in the loan listing set forth in the excel file titled "BANA Non-Performing Student Loan Tape (10.30.17.vF)" delivered by Seller to Purchaser on the Closing Date.

2

CONFIDENTIAL

SLS Document Production Bates 0104

| ANNEX1 | Borrower_Zist Id | Borrower_Lstnm | Borrower_First Nm | Borrower_Middle | Borrower_Acct4dr1 | Borrower_Acct4dr2 | Borrower_City | Borrower_Sta te/Lovst | Borrower_Zip | Borrower_DOB | Contract Date | Principal Amount | Accrued Interest | BalCurr | ChgoffPrin | ChgoffRemOrig | Co-borrower_Tand | Co-borrower_Lstnm | Co-borrower_Firstlin | LstPmtAmt | LstPmtDt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3517 | 428 SCHICK | AMANDA | L | 2711 W POWELL BLVD APT 18 | | GRESHAM | OR | 970306647 | 'XX XX/XX/XX | 93 08/28/07 | $45,203.56 | $1,169.57 | $50,373.13 | XX/XX | 02/24/14 | | | | $50,203.56 | $50.00 9/9/2016 |

CONFIDENTIAL
SLS Document Production Bates 0105

*Exhibit C to*
*Loan Sale Agreement*

## POWER OF ATTORNEY

BANK OF AMERICA, N.A. ("Seller") hereby authorizes Student Loan Solutions, LLC ("Purchaser"), Williams & Fudge, Inc. and any representative of Purchaser as its attorney-in-fact, to endorse Seller's name upon (a) checks or other forms of payment received with respect to the Purchased Loans (as defined in the Loan Sale Agreement described below), and (b) any promissory notes, other instruments, and other documents necessary to carry out the intent of the Loan Sale Agreement dated as of October 31, 2017, by and between Purchaser and Seller, and the transfers provided for therein.

This power of attorney is coupled with an interest and is irrevocable.

A facsimile of this authorization may be used in place of the original.

Date:  [●], 20[●].

**BANK OF AMERICA, N.A.**

By:  _____

Name:  _____

Title:  _____

Exh. C-1

CONFIDENTIAL          SLS Document Production Bates 0106

## POWER OF ATTORNEY

BANK OF AMERICA, N.A. ("Seller") hereby authorizes Student Loan Solutions, LLC ("Purchaser"), Williams & Fudge, Inc. and any representative of Purchaser as its attorney-in-fact, to endorse Seller's name upon (a) checks or other forms of payment received with respect to the Purchased Loans (as defined in the Loan Sale Agreement described below), and (b) any promissory notes, other instruments, and other documents necessary to carry out the intent of the Loan Sale Agreement dated as of October 31, 2017, by and between Purchaser and Seller, and the transfers provided for therein.

This power of attorney is coupled with an interest and is irrevocable.

A facsimile of this authorization may be used in place of the original.

Date: October 31, 2017.

BANK OF AMERICA, N.A.

By: _____

Name: Debra J. Minton

Title: Senior Vice President

CONFIDENTIAL          SLS Document Production Bates 0107

*Exhibit D to*
*Loan Sale Agreement*

<u>Specified Data Fields</u>

AcctNrRec
Borrower Taxid
Borrower Name **OR** LstNm, FirstNm1, and MiddleNm
Borrower AcctAdr1
Borrower AcctAdr2
Borrower City
Borrower CustGeoState
Borrower Zip
Borrower Dob
Borrower HomePhn
Borrower OfficePhn
DlrCd
ContractDt
PrinAm
AccruInt
BalCurr
ChgoffDt
ChgoffAmOrig
Co-Borrower TaxId
Co-Borrower LstNm
Co-Borrower FirstNm
Co-Borrower Addr1
Co-Borrower Addr2
Co-Borrower City
Co-Borrower State
Co-Borrower Zip
Co-Borrower HomePhn
RecCd
LstPmtAmt
LstPmtDt
AssocCost
Additional Comments

# EXHIBIT B

SLS Document Production Bates 0001

## Creditworthy Student ~ Loan Request/Credit Agreement ~ Signature Page

**NON-NEGOTIABLE CREDIT AGREEMENT ~ THIS IS A CONSUMER CREDIT TRANSACTION**

### LOAN PROGRAM INFORMATION

Education Maximizer Undergraduate Loan

Academic Period: 08/2007-05/2008

Lender: Bank of America, National Association

School: MULTNOMAH BIBLE COLLEGE/SEMINA

Loan Amount Requested: $30000.00     Repayment Option: Full Deferral

Deferral Period Margin: 5.65     Repayment Period Margin: 5.65     Loan Origination Fee Percentage: 10.50

### BORROWER INFORMATION (Must be age of majority in state of residence)

Borrower Name: Amanda L Schick
Social Security #: [        ]28
Mobile Telephone:
Current Employer: RANDSTAD
Current Position: Other
Years at Previous Employment: 6 Years 2 Months

Home Address: 2615 Bonnie Doon Ave Yakima, WA 98902
Date of Birth: [        ] 1983     Home Telephone: (509) 469-1171
E-mail Address:
Employer Telephone: (503) 639-5291
Years There: 0 Years 1 Months

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Student Citizenship (check one box): ☒ U.S. Citizen     ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Personal Reference Name: Sherry Schick     Reference Home Tel #: (509) 952-1487     Work Tel #:
Reference Street Address: 1119 Queen Ave
Reference City/State/Zip:   Yakima, WA 98902

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all five (5) pages of this Loan Request/Credit Agreement BK.07-08.CRWO.10DC.0107 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

For purposes of the following notices, "you" means the Borrower, not the Lender.

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:**
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY CREDIT AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

**PLEASE SIGN BELOW ~ RETURN This Page With Proof of Income and Other Information (if applicable)**
**FAX TO: 800-704-9406**

Signature of Borrower _____     Date 8/24/07

**BK.07-08.CRWO.10DC.0107**
PN01_BD_07-08_CRWO_F_X_SCHICK_A105594423.pdf

1 of 5
BORROWER COPY

BKJUDP

SLS Document Production Bates 0002

**\* Creditworthy Student \*   Loan Request/Credit Agreement – Signature Page**

### NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

**LOAN PROGRAM INFORMATION**

Loan Program:                        Academic Period:

Lender: Bank of America, National Association       School:

Loan Amount Requested:          Repayment Option:

Deferral Period Margin:          Repayment Period Margin:        Loan Origination Fee Percentage:

**BORROWER INFORMATION (Must be age of majority in state of residence)**

Borrower Name:               Home Address:
Social Security #:             Date of Birth:            Home Telephone:
Mobile Telephone:           E-mail Address:
Current Employer:                                        Employer Telephone:
Current Position:            Years There:
Years of Previous Employment:

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Student Citizenship (check one box):   ☐ U.S. Citizen        ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Personal Reference Name:_____     Reference Home Tel #:_____ Work Tel #:_____
Reference Street Address:_____
Reference City/State/Zip:_____

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all five (5) pages of this Loan Request/Credit Agreement BK.07-08.CRWO.10DC.0107 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

For purposes of the following notices, "you" means the Borrower , not the Lender.

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:**
**(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.**
**(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.**
**(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY CREDIT AGREEMENT YOU SIGN.**
**(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.**

**PLEASE SIGN BELOW – RETURN This Page With Proof of Income and Other Information (if applicable)**
**FAX TO:**

Signature of Borrower_____       Date _____

{W0675675.1}**BK.07-08.CRWO.10DC.0107**      1 of 5

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person who signed this Credit Agreement as Borrower. The words "you", "your", "yours", and "Lender" mean Bank of America, National Association, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

A. PROMISE TO PAY: I promise to pay to you the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together, the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.6).

B. IMPORTANT – READ THIS CAREFULLY:

1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me along with interest and all other amounts I owe (see Paragraph A). You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the School.

2. HOW I AGREE TO THE TERMS OF THIS LOAN. By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b) using or allowing the loan proceeds to be used on my behalf without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

C. DEFINITIONS:

1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.

2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) Undergraduate Alternative Loan Program: If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the Student first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60

days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the date the Student first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date. For borrowers who chose the "Interest Only" or "Full Deferral" repayment options, joint and serial (associates to bachelors) degree recipients may continue in-school deferment while completing their second degree, up to the 5-year or 5½-year maximum.

(b) Graduate Professional Education Loan Program: The Deferment End Date will be 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.

4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

D. INTEREST:

1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of California. The Variable Rate will change monthly on the first day of each calendar month (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar month (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar month) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of The Wall Street Journal (Eastern Edition). The index for each calendar month (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar month) will equal the LIBOR rate published on the first business day of the immediately preceding calendar month, rounded to the nearest one-hundredth of one percent (0.01%). If The Wall Street Journal (Eastern Edition) is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will also add all accrued and unpaid interest to the principal balance of my loan at the end of any forbearance period (see Paragraph H).

SLS Document Production Bates 0004

## E.  TERMS OF REPAYMENT:

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you may, or, if required by applicable law, will send me statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan).  Statements will be sent to the address shown on your records.  If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement.  If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins.  During the Repayment Period, you will send me monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge.  If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3. Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest.  If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less.  To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

**F.  LOAN ORIGINATION FEE:** If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed.  The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this

Credit Agreement.  The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced).  For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced.  The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum.  To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

**G.  RIGHT TO PREPAY:** I have the right to prepay all or any part of my loan at any time without penalty.

**H.  FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option, and, to the extent not prohibited by applicable law, you may charge me a fee equal to two percent 2% of the outstanding principal balance if you agree to modify the terms of this Credit Agreement. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any 2% fee described in the previous sentence and all interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

**I.  WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefit of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

**J.  NOTICES:**

1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in my name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me.

**K.  INFORMATION:**

1. I must update the information I provided to you whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

3.  CREDIT BUREAU REPORTING

> **You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.**

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults in accordance with applicable law.

**L.  ADDITIONAL AGREEMENTS:**

1.  I understand that you are located in California and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under the Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

10. If I fail to complete the education program paid for with this loan, I am not relieved of any obligation within or pursuant to this Credit Agreement.

11. **I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.**

12. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

13. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents (including TERI) to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) retain for use in any future transaction with the Borrower all information (including status information and non-public personal information) of the Borrower provided in connection with this Credit Agreement.

14. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

15. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You

and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

16. If I elect to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and me: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.

M. DISCLOSURE NOTICES

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
**To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.**

*What this means for you:*
**When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

**IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.**

MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of CALIFORNIA, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

**MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable.**

**To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

**N. BORROWER'S CERTIFICATION:** I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school. The legal age for entering into contracts is 18 years of age in every State in the United States except the following: Alabama and Nebraska (19 years old), and Mississippi and Puerto Rico (21 years old). I certify that I meet these state age requirements.

**By signing this Credit Agreement, to the extent permitted by applicable law, I hereby ratify, confirm, and acknowledge the validity of all prior credit agreements I have signed with the Lender for this loan program. I intend and agree that all such credit agreements shall be binding on me. The consideration for this affirmation is the new credit extended by the Lender to me under this Credit Agreement.**

# EXHIBIT C

SLS Document Production Bates 0007

## NOTE DISCLOSURE STATEMENT

$ __33,519.55__
Loan No. ____423

| | |
|---|---|
| Borrower(s) | AMANDA L SCHICK |
| Student: | AMANDA L SCHICK |
| Date: | August 28, 2007 |

AMANDA L SCHICK
626 NE 93RD AVE APT A
PORTLAND , OR 97220   USA

**Lender Name and Address:**
BANK OF AMERICA, N.A.
600 WILSHIRE BLVD, 4TH FLOOR
LOS ANGELES, CA 90017

This disclosure statement relates to your Loan Note disbursed on      August 28, 2007 .
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments scheduled. |
|---|---|---|---|
| 12.097 % | $ 87,439.20 | $ 30,000.00 | $ 117,439.20 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are due | |
|---|---|---|---|
| 240 | $ 489.33 | On the  14th day of each month beginning | 12/2010 |
| | | | |
| | | | |
| | | | |

**VARIABLE RATE:** The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is (check one):

☐ **Prime Rate Index Adjusted Monthly** - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar month.

☐ **Prime Rate Index Adjusted Quarterly** - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar quarter.

☐ **LIBOR Index Adjusted Quarterly** - The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

☒ **LIBOR Index Adjusted Monthly** - The one-month London Interbank Offered Rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of the preceding calendar month.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $91.01, and your monthly principal and interest payments would increase by $9.37.

**LATE CHARGES:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

**Estimates:** All numerical disclosures except the late payment disclosure are estimates.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties.

Principal Amount of Note (Amount Financed plus Prepaid Finance Charge)      $ ___33,519.55___

Itemization of Amount Financed
Amount paid to  AMANDA L SCHICK       $ ___30,000.00___
Amount paid to       $ _____
Total Amount Financed       $ ___30,000.00___

Itemization of Prepaid Finance Charge
Origination Fee       $ ___3,519.55___
Total Prepaid Finance Charge(s)       $ ___3,519.55___

CSA TRAJ 6/03 9736  407      BKJUDP  Education Maximizer Ugrad Loan        **File Copy**

# EXHIBIT D

BORROWER SSN: 428

1ˢᵗ DISB: 08-28-2007

NAME: AMANDA L SCHICK

LOAN SEQ: 2

LOAN PROGRAM: ALPLN

SLS Document Production Bates 0010

| | Effective Date | Posted Date | Transaction Sub-Type | Transaction Type | Payment History | | | | Outstanding | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Applied | | | Interest Accrual | Principal | Interest |
| | | | | | Principal | Interest | Late Fees | | | |
| 1 | 08-28-2007 | 08-28-2007 | AUTOMATIC | DISBURSEMENT | 33519.55 | 0.00 | 0.00 | 0.00 | 33519.55 | 0.00 |
| 2 | 10-01-2007 | 10-01-2007 | AUTOMATIC | CAPITALIZATION | 342.52 | -342.52 | 0.00 | 342.52 | 33862.07 | 0.00 |
| 3 | 01-01-2008 | 01-02-2008 | AUTOMATIC | CAPITALIZATION | 926.13 | -926.13 | 0.00 | 926.13 | 34788.20 | 0.00 |
| 4 | 04-01-2008 | 04-01-2008 | AUTOMATIC | CAPITALIZATION | 862.41 | -862.41 | 0.00 | 862.41 | 35650.61 | 0.00 |
| 5 | 07-01-2008 | 07-01-2008 | AUTOMATIC | CAPITALIZATION | 755.04 | -755.04 | 0.00 | 755.04 | 36405.65 | 0.00 |
| 6 | 10-01-2008 | 10-01-2008 | AUTOMATIC | CAPITALIZATION | 742.15 | -742.15 | 0.00 | 742.15 | 37147.80 | 0.00 |
| 7 | 01-01-2009 | 01-02-2009 | AUTOMATIC | CAPITALIZATION | 806.76 | -806.76 | 0.00 | 806.76 | 37954.56 | 0.00 |
| 8 | 04-01-2009 | 04-01-2009 | AUTOMATIC | CAPITALIZATION | 616.36 | -616.36 | 0.00 | 616.36 | 38570.92 | 0.00 |
| 9 | 07-01-2009 | 07-01-2009 | AUTOMATIC | CAPITALIZATION | 588.54 | -588.54 | 0.00 | 588.54 | 39159.46 | 0.00 |
| 10 | 10-01-2009 | 01-04-2009 | AUTOMATIC | CAPITALIZATION | 587.63 | -587.63 | 0.00 | 587.63 | 39747.09 | 0.00 |
| 11 | 01-01-2010 | 01-04-2010 | AUTOMATIC | CAPITALIZATION | 591.42 | -591.42 | 0.00 | 591.42 | 40338.51 | 0.00 |
| 12 | 04-01-2010 | 04-01-2010 | AUTOMATIC | CAPITALIZATION | 584.85 | -584.85 | 0.00 | 584.85 | 40923.36 | 0.00 |
| 13 | 07-01-2010 | 07-01-2010 | AUTOMATIC | CAPITALIZATION | 602.30 | -602.30 | 0.00 | 602.30 | 41525.66 | 0.00 |
| 14 | 10-01-2010 | 10-01-2010 | AUTOMATIC | CAPITALIZATION | 626.29 | -626.29 | 0.00 | 626.29 | 42151.95 | 0.00 |
| 15 | 01-01-2011 | 01-03-2011 | AUTOMATIC | CAPITALIZATION | 627.55 | -627.55 | 0.00 | 627.55 | 42779.50 | 0.00 |
| 16 | 04-01-2011 | 04-01-2011 | AUTOMATIC | CAPITALIZATION | 623.77 | -623.77 | 0.00 | 623.77 | 43403.27 | 0.00 |
| 17 | 07-01-2011 | 07-05-2011 | AUTOMATIC | CAPITALIZATION | 637.00 | -637.00 | 0.00 | 637.00 | 44040.27 | 0.00 |
| 18 | 10-01-2011 | 10-03-2011 | AUTOMATIC | CAPITALIZATION | 648.27 | -648.27 | 0.00 | 648.27 | 44688.54 | 0.00 |

SLS Document Production Bates 0011

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 19 | 01-01-2012 | 01-03-2012 | AUTOMATIC | CAPITALIZATION | 663.06 | -663.06 | 0.00 | 663.06 | 45351.60 | 0.00 |
| 20 | 04-01-2012 | 04-02-2012 | AUTOMATIC | CAPITALIZATION | 668.22 | -668.22 | 0.00 | 668.22 | 46019.82 | 0.00 |
| 21 | 07-01-2012 | 07-02-2012 | AUTOMATIC | CAPITALIZATION | 673.93 | -673.93 | 0.00 | 673.93 | 46693.75 | 0.00 |
| 22 | 10-01-2012 | 10-01-2012 | AUTOMATIC | CAPITALIZATION | 691.32 | -691.32 | 0.00 | 691.32 | 47385.07 | 0.00 |
| 23 | 01-01-2013 | 01-02-2013 | AUTOMATIC | CAPITALIZATION | 698.78 | -698.78 | 0.00 | 698.78 | 48083.85 | 0.00 |
| 24 | 02-28-2013 | 05-14-2013 | AUTOMATIC | CAPITALIZATION | 448.15 | -448.15 | 0.00 | 448.15 | 48532.00 | 0.00 |
| 25 | 10-01-2013 | 10-01-2013 | AUTOMATIC | CAPITALIZATION | 1671.56 | -1671.56 | 0.00 | 1671.56 | 50203.56 | 0.00 |
| 26 | 02-24-2014 | 02-24-2014 | AUTOMATIC (DEF ACCT) | CHARGE OFF | -50203.56 | -1169.57 | 0.00 | 1169.57 | 0.00 | 0.00 |

| Type | Region | Beginning Date | Deferment/Forbearance | | Description |
|---|---|---|---|---|---|
| | | | Ending Date | | |
| 1 | F | PA | 04-01-2013 | 09-30-2013 | GRACE |