UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMANDA SCHICK,<br><br>        Plaintiff,<br>v.<br><br>STUDENT LOAN SOLUTIONS, LLC,<br><br>        Defendant. | No. 2:20-CV-1529-BJR<br><br>ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND ORDER TO SHOW CAUSE |

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment. Dkt. No. 19. Having reviewed the materials submitted by the parties, the Court DENIES the motion and ORDERS the parties to show cause why this case should not be stayed until the state-court action between the parties is resolved. The reasons for the Court's decision are set forth below.

## I.  BACKGROUND

This case concerns debt collection efforts by Defendant Student Loan Solutions (SLS) against Plaintiff Amanda Schick. Defendant maintains that in 2017, it purchased a portfolio of student loans from Bank of America which included a loan that Plaintiff had received in August 2007 while a sophomore at Multnomah Bible College in Portland, Oregon. Plaintiff denies that she ever received the loan. She also argues that Defendant has not demonstrated that it owns the right to collect the claimed debt.

ORDER - 1

On June 22, 2020, Defendant's attorney sent Plaintiff a letter seeking to collect the alleged debt.  In response to a request by Plaintiff for more information, Defendant's attorney sent Plaintiff an account statement that listed Plaintiff's debt on the loan as $50,373.13, as well as a document indicating that Defendant sought $10,074.63 in attorney fees from Plaintiff, a figure which represented a 20 percent "attorney fee commission rate" on the total debt. Defendant also sent Plaintiff a "Loan Request/Credit Agreement" bearing her name that had been signed on August 24, 2007, for a $30,000 student loan from Bank of America, along with a "Note Disclosure Statement" dated August 28, 2007, indicating that the loan had been disbursed. In addition, Defendant sent Plaintiff documents indicating that Defendant had purchased loans from Bank of America in October 2017, although these documents did not specifically identify Plaintiff's loan as one that Defendant had purchased.[1]

On August 10, 2020, Defendant filed a complaint against Plaintiff in Pierce County District Court, seeking a judgment for $50,373.13 in principal and unpaid interest on the loan, as well as statutory attorney's fees and court costs.  Defendant's counsel indicates that this state-court case has not yet been resolved.

Plaintiff filed this lawsuit in King County Superior Court on October 6, 2020, in which she brought federal claims against Defendant under the Fair Debt Collection Practices Act and state law claims under the Washington State Collection Agency Act and the Washington Consumer Protection Act.  Defendant removed the case to this Court on October 15, 2020.

Plaintiff has now filed a motion for partial summary judgment as to Defendant's liability. Plaintiff filed this motion well in advance of the discovery deadline of November 17, 2021.

---

[1] The Bill of Sale that Defendant sent to Plaintiff indicated that Defendant had purchased loans "described in Annex I attached hereto," but "Annex I" was not sent by Defendant to Plaintiff. Dkt. No. 19-1, Ex. C.

ORDER - 2

## II.      DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  At the summary judgment stage, the Court must view the evidence in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in favor of the non-moving party.[2]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**B.      Plaintiff's Claims**

Plaintiff has brought claims under §§ 1692e and 1692f of the federal Fair Debt Collection Practices Act (FDCPA).  Section 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," while Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."  Plaintiff has also brought state law claims under the Washington Collection Agency Act (CAA), which is the "state's counterpart to the FDCPA." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 897 (Wash. 2009).  Violations of the CAA are *per se* violations of the Washington Consumer Protection Act (CPA). *Id.*

Plaintiff argues that Defendant violated these federal and state laws by: (1) seeking to collect a debt that Plaintiff does not owe; (2) seeking to collect a debt that Defendant cannot demonstrate that it owns the right to collect; and (3) representing to Plaintiff that she owed over

---

[2] Plaintiff argues that Defendant's 26-page opposition to her motion is overlength by two pages under the Local Civil Rules for the Western District of Washington, and requests that the Court strike the last two pages of the opposition brief.  The Court denies this request because the Court's Standing Order for All Civil Cases provides a 30-page limit for summary judgment motions and oppositions, rather than the 24-page limit in the Local Civil Rules. Dkt. No. 7 at 4.

ORDER - 3

$10,000 in attorney's fees as a 20 percent "commission" on the claimed debt. The Court considers each of these issues below.

### 1. Plaintiff's Allegations that Defendant Attempted to Collect a Debt on a Loan that Plaintiff Never Received

Plaintiff denies taking out the student loan in question and argues that Defendant lacks evidence to show that she received the loan. As a result, Plaintiff maintains that Defendant should be held liable under the FDCPA and the CAA/CPA for attempting to collect a debt that she does not actually owe.

Viewing the evidence in the light most favorable to Defendant as the non-moving party, the Court finds that Defendant has produced sufficient evidence to raise a genuine dispute of material fact on this issue. The parties present sharply conflicting versions of whether a loan took place, and the documents or lack thereof do not resolve the issue.

Defendant has produced a document titled "Loan Request/Credit Agreement" bearing Plaintiff's name that was signed on August 24, 2007 and requests a student loan of $30,000 from Bank of America, National Association.[3] Plaintiff argues that this document is simply a loan application. However, the Loan Request/Credit Agreement signed by Plaintiff includes the following provision:

> **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me . . . . If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. . . . I will let you know that I agree with the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b) using or allowing the loan proceeds to be used on my behalf without objection.

---

[3] Plaintiff indicates that the signature on the document appears to be hers, but she does not recall signing it. Dkt. No. 19 at 5.

ORDER - 4

Dkt. No. 22-1, Ex. B, at 2.

Defendant has produced a "Note Disclosure Statement" dated August 28, 2007, that lists Plaintiff's name and the address in Portland where Plaintiff lived at the time. The document states that it "relates to your loan note" disbursed on that date, and indicates that the "amount of credit provided to you or on your behalf" was $30,000, with payments to begin in December 2010.[4]  Dkt. No. 22-1, Ex. C.

However, Plaintiff points out that Defendant has not produced evidence to show that the $30,000 loan was actually received by Plaintiff, such as a copy of a check or a deposit receipt. In addition, Plaintiff's records from Multnomah College do not indicate that the college received a $30,000 loan payment for Plaintiff's Fall 2007 charges. Plaintiff also notes that her bank statements from 2007, which Defendant obtained through a third-party subpoena and filed with the Court after it had submitted its response to Plaintiff's summary judgment motion, do not show any deposit in the amount of $30,000.[5]

However, Defendant has offered other evidence to support its assertion that Plaintiff received the loan. First, Defendant has produced a bankruptcy petition that Plaintiff filed in the Eastern District of Washington in April 2010. Dkt. No. 22-5, Ex. B. The debts listed by Plaintiff in this filing included an "education loan" in the amount of $40,338, owed to "AES Bank of America." *Id.* Defendant has offered evidence that the amount of debt listed by Plaintiff for this

---

[4] The Note Disclosure Statement indicates that the loan included an origination fee of $3,519.55 and a variable interest rate that would start at 12.097 percent

[5] Plaintiff's bank statements indicate that she received a $25,000 deposit on September 28, 2007, which is listed as "Online transfer Ref # [Redacted] TP5F From Checking Student Loan." Dkt. No. 23-1, Ex. D. Her bank statements also include a withdrawal of $25,000 on October 2, 2007, which is listed as "Aes Stdnt Loan [Redacted] 0769 Amanda L. Schick." *Id.*  The parties have not offered evidence that explains the source of the $25,000 deposit or why there was a $25,000 withdrawal from Plaintiff's bank account several days after she received this money.

ORDER - 5

loan in her bankruptcy petition is the same amount of debt ($40,338) that Bank of America's records indicate that Plaintiff allegedly owed as of January 2010. Dkt. No. 22-1, Ex. D. Defendant also notes that Plaintiff did not indicate in her bankruptcy filing that she disputed this debt, despite the fact that the petition included a box for Plaintiff to check if the debt was disputed.

In response to an interrogatory from Defendant asking why Plaintiff listed this student loan as one of her liabilities in the bankruptcy petition, Plaintiff stated that she "inclusively listed every entity that claimed that she owed money" and her "mere act of listing her debts in bankruptcy schedules only indicated a list of debts she did not intend to pay and has no further meaning." Dkt. No. 22-5, Ex. A at 7. However, viewing the evidence in the light most favorable to Defendant, the fact that Plaintiff listed this debt from Bank of America in her bankruptcy petition without indicating that she disputed the debt raises a genuine issue of material fact as to whether Plaintiff received the student loan in question.[6]

Defendant has also offered evidence that Plaintiff made 20 payments of $50 per month on the Bank of America loan between February 2015 and September 2016. Dkt. No. 22-3 at 2. Plaintiff made these payments after she was contacted by a debt collector operating under the name of Williams & Fudge, Inc. (WFI), which Bank of America had retained to attempt to collect the loan. Plaintiff maintains that she made these nominal payments on the loan because she was intimidated and wanted to avoid the consequences of non-payment. But again, viewing the evidence in the light most favorable to Defendant, the question of why Plaintiff made these

---

[6] Both Plaintiff and Defendant maintain that to resolve this motion, the Court need not reach the question of whether the alleged student loan debt was discharged by Plaintiff's 2010 bankruptcy. However, Defendant argues that student loans are generally not dischargeable in bankruptcy.

ORDER - 6

payments on the Bank of America loan raises a factual issue as to whether Plaintiff had received the loan.

In addition, Defendant has offered a transcript of a telephone conversation from January 2018 between Plaintiff and an employee of WFI, who was acting as a representative of Defendant at the time. In this conversation, Plaintiff said she was "calling about an email I received about a debt I have." Dkt. No. 22-3, Ex. B at ECF p. 13. The transcript indicates that Defendant's representative stated "my name is Doug Kearse, here at Williams & Fudge, represent [sic] Student Loan Solutions. We have now acquired your defaulted student loan with Bank of America." *Id.* at 14. Mr. Kearse indicated that the balance was $50,373.13, which is the same amount of debt that Defendant later demanded from Plaintiff in 2020. Plaintiff and Mr. Kearse discussed possible ways to resolve the debt during the conversation, and at no point during the conversation did Plaintiff indicate that she denied having taken the loan. As before, this conversation further creates an issue of fact as to whether Plaintiff had received the student loan at issue.

As a result, the Court denies Plaintiff's motion for partial summary judgment to the extent the motion is based on allegations that Defendant violated federal or state law by attempting to collect a student loan debt that Plaintiff does not owe. There is plainly a genuine dispute of material fact on the issue of whether Plaintiff received this loan.[7]

---

[7] Defendant also argues that under the doctrines of equitable estoppel or judicial estoppel, Plaintiff should be precluded from denying that she received the student loan. However, the record before the Court on this motion is not sufficient to support Defendant's contention.

ORDER - 7

### 2. Plaintiff's Allegations that Defendant Attempted to Collect a Debt It Does Not Own the Right to Collect

In her opening brief, Plaintiff argues that Defendant does not have evidence showing that it owns the debt on the putative student loan. In its response, Defendant has offered declarations from SLS and WFI, along with supporting exhibits. Both declarations are signed by Christopher Ruh, who states that he is the General Manager of SLS as well as the Executive Vice President of WFI. Mr. Ruh indicates that WFI has a contract to maintain SLS's records, including borrower loan documents, and also assists SLS with the collection of accounts. Through his declaration for SLS, Mr. Ruh has offered a Loan Sale Agreement indicating that on October 31, 2017, SLS purchased a portfolio of student loans from Bank of America. Dkt. No. 22-1, Ex. A. This exhibit includes a page that identifies Plaintiff's loan as one of the student loans included in the purchase. *Id.* at Bates No. 0104.

Plaintiff has moved to strike a number of paragraphs from both of Mr. Ruh's declarations, as well as the exhibits referenced in those paragraphs.[8] Defendant filed a surreply in response to Plaintiff's motion to strike.

The Court denies Plaintiff's motion to strike. Plaintiff asserts that the page in Defendant's exhibit which indicates that Plaintiff's loan was included in the portfolio of student loans purchased by SLS "appears to have been created solely for the purposes of litigation, as it was not created in the regular course of business, and therefore is not admissible under the business record exception to the hearsay rule." Dkt. No. 24 at 3. However, as Defendant notes, Plaintiff offers no support for its claim that this page of the exhibit was created solely for the

---

[8] Specifically, Plaintiff moves to strike ¶¶ 3-28, 30 of the SLS declaration (Dkt No. 22-1), and ¶¶ 4-5, 11 of the WFI declaration (Dkt No. 22-3), as well as the exhibits referenced in those paragraphs.

ORDER - 8

purposes of litigation. The Court finds that Mr. Ruh is competent to authenticate this document, as he was the person who signed the Loan Sale Agreement on behalf of SLS.

To the extent that Plaintiff challenges Mr. Ruh's ability to authenticate documents that SLS received from Bank of America, Defendant also notes that business records received from others may be admitted under Fed. R. Evid. 803(6) when: (1) the records are received directly from the other party and are kept by the recipient in the regular course of its business; (2) the records are relied upon by the recipient business; and (3) the recipient business has a substantial interest in the accuracy of the records. *DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Connect Ins. Agency, Inc.*, No. C14-5880JLR, 2016 WL 631574, at *16 (W.D. Wash. Feb. 16, 2016). The Court agrees with Defendant that the business records SLS received from Bank of America with respect to Plaintiff's loan satisfy these criteria.

The Court also rejects Plaintiff's argument that Mr. Ruh has failed to demonstrate personal knowledge of the facts asserted in his declarations. Plaintiff makes this argument at a highly general level, without discussing in detail the specific factual assertions in Mr. Ruh's declarations that Plaintiff asserts that Mr. Ruh lacks the personal knowledge to make. Here, Mr. Ruh's declaration for SLS indicates that he is the General Manager of SLS and has full access to and personal knowledge of SLS's business records, including those acquired from Bank of America, and that his declaration is based on his personal knowledge and review of SLS business records. His declaration for WFI includes similar statements regarding his personal knowledge of WFI's business records.

As a result, the Court denies Plaintiff's motion for partial summary judgment to the extent it is based on allegations that Defendant lacks evidence to show that it owns the right to collect debt on Plaintiff's loan.

ORDER - 9

### 3. Defendant's Attempt to Collect Attorney's Fees from Plaintiff

Plaintiff maintains that Defendant violated provisions of the FDCPA and CAA/CPA by sending her a document that claimed she owed over $10,000 in attorney's fees. She argues that the claimed fees were unreasonable, as they were simply calculated as 20 percent of Plaintiff's alleged debt, and asserts that no statute or contract authorized Defendant to make a claim for attorney's fees prior to filing a lawsuit. Dkt. No. 19 at 11-12. Plaintiff argues that demanding attorney's fees not presently owed is an FDCPA violation and cites *McCollough v. Johnson, Rodenburg & Lauinger, LLC,* 637 F.3d 939, 949 (9th Cir. 2011), to support this assertion.

In response, Defendant notes that the Ninth Circuit's decision in *McCollough* concerned a case where the debt collector had "presented no admissible evidence of a contract authorizing a fee award," (*id.* at 950), whereas here Defendant points to a provision of the Loan Request/Credit Agreement signed by Plaintiff that states "[t]o the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs." Dkt. No. 19-1 at ECF p. 18, ¶ E.6. Defendant asserts that this provision by its terms does not require Defendant to file a lawsuit against Plaintiff as a prerequisite to seeking attorney's fees.

Plaintiff does not respond to this point in her reply. Instead, she maintains that the 20 percent attorney fee was "absolutely uncollectable under any interpretation of law" and suggests that because Defendant did not include such a demand for fees in its state-court lawsuit, Defendant "knew that such fee was illegal." Dkt. No. 24 at 7.

The Court notes that the fee provision in the Loan Request/Credit Agreement concerns Defendant's ability to recover its "reasonable" attorney's fees, not fees in the amount of 20 percent of the total debt. However, while the amount of fees sought by Defendant may appear

ORDER - 10

excessive on its face, neither party has offered evidence from which the Court may determine whether this amount is a reasonable or an unreasonable attorney fee under the facts of this case.[9] Therefore, while the Court will deny Plaintiff's motion for partial summary judgment on these claims, the question remains whether Defendant's attorney fee "commission" request violates the FDPCA and CAA/CPA.

**C.  Order to Show Cause Why This Action Should Not Be Stayed Until the Parties' State-Court Action Is Resolved**

In its opposition to this motion, Defendant suggests that Plaintiff's summary judgment motion is premature because Defendant's state-court lawsuit against Plaintiff in Pierce County District Court is still pending.  Defendant asserts that "[s]ince the state court acquired jurisdiction first, it should be able to adjudicate the issue of whether Plaintiff received the loan" because "[o]therwise, [both] courts could reach inconsistent conclusions."  Dkt. No. 22 at 22.  However, Defendant did not request a stay of this case pending resolution of the state-court action, nor has Defendant pointed to any legal authority to suggest that Plaintiff's summary judgment motion is premature due to the pending state-court action.

Nonetheless, it appears likely to the Court that both this action and the state-court action will ultimately require a determination of whether Plaintiff received the student loan in question, with the parties litigating the same issue in two different forums and the possibility of inconsistent results.  This raises the question of whether judicial economy, as well as the resources of the parties, would be better served by staying this action until the state-court case is resolved.  *See, e.g.*, *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (noting that a trial court "may, with propriety, find it efficient for its own docket and the fairest

---

[9] Because the Court denies summary judgment on this basis, the Court finds that it is not necessary to reach additional arguments raised by Defendant in opposition to these claims.

ORDER - 11

course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.").

Therefore, the Court ORDERS the parties to show cause why this case should not be stayed until the resolution of the state-court action between the parties in Pierce County District Court. The parties are directed to meet and confer before responding to the Order to Show Cause to determine whether the parties agree that a stay is warranted. If the parties are in agreement, they may respond to the Order to Show Cause by filing a stipulated motion and proposed order for a stay. Otherwise, each side shall file a brief of no more than 10 pages in response to this Order to Show Cause by August 13, 2021.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 19) is DENIED. The parties are further ORDERED to show cause by August 13, 2021, why this case should not be stayed until the state-court action between the parties is resolved.

Dated: July 30, 2021

*Barbara J. Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER - 12